[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-14793

Non-Argument Calendar

_____

LATITE ROOFING & SHEET METAL, LLC,

Petitioner,

*versus*

OCCUPATIONAL SAFETY AND HEALTH REVIEW
COMMISSION,
U.S. DEPARTMENT OF LABOR,

Respondents.

————————————

Petition for Review of a Decision of the
Occupational Safety and Health Review Commission
Agency No. 18-1845

————————————

Before JORDAN, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Latite Roofing and Sheet Metal, LLC ("Latite") appeals from the Occupational Safety and Health Review Commission's ("Commission") affirmance of the Administrative Law Judge's (ALJ) decision finding a repeat violation of 29 C.F.R. § 1926.605(b)(10) and imposing a penalty. On appeal, Latite argues that the ALJ abused her discretion when she accepted perjured testimony, held that Latite violated the Occupational Safety and Health Act's fall protection standard, held that it was a repeat violation, and held that an increased penalty was warranted.[1]

---

[1] Latite mentions, in a footnote, its challenge below to the timeliness of the Occupational Safety and Health Administration's ("OSHA") issuance of the underlying citation. However, we have held that an issue only raised in a footnote is not properly raised before this Court and is waived. *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013); *see also United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived."). Further, 29 U.S.C. § 658(c) requires the issuance, not the receipt, of the citation no more than six months after the violation; the evidence adduced at the hearing supported a finding that this occurred.

Because we write for the parties, we assume familiarity with the facts and set out only those necessary for the resolution of this appeal.   The United States Department of Labor's Occupational Safety and Health Administration ("OSHA") conducted an inspection of Latite's roofing activity on April 25, 2018, and issued a Citation and Notification of Penalty alleging a repeat violation of 29 C.F.R. § 1926.501(b)(10) and proposing a penalty of $71,137. After a hearing before the ALJ, the ALJ issued an opinion affirming the citation and penalty.  The Commission declined to review the decision, making the ALJ's decision the decision of the Commission.  29 C.F.R. § 2200.90(f).

We accord considerable deference to Commission decisions and apply the substantial evidence standard.  *Fluor Daniel v. Occupational Safety & Health Rev. Comm'n*, 295 F.3d 1232, 1236 (11th Cir. 2002).  Under this standard, "[t]he findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive."  29 U.S.C. § 660(a).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Fluor Daniel*, 295 F.3d at 1236 (cleaned up).  We will not overturn decisions by the Commission unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." 5 U.S.C. § 706(2)(A).

I.

Latite argues that the ALJ relied on perjurious testimony to support the citation.  Specifically, Latite argues that OSHA

compliance officer Burcham allegedly provided perjured testimony about two things. In the first, Latite asserts that Burcham testified that he saw a Latite employee pushing a wheelbarrow down to "probably within four feet" of the edge of the roof and dumping tiles in the wheelbarrow into a dump truck parked below but later admitted he had not seen the wheelbarrow operator do that. In the second, he testified that he saw tiles that had been removed from the roof stacked along the ridge and that the wheelbarrow was full of tiles. But on cross examination, and closer examination of the photos, he admitted that the stacks were instead paper and that the wheelbarrow was empty. Latite argues this change in testimony was important because the Secretary's failure to show that one of the employees was exposed to the hazard means its case for the citation cannot be supported.

We reject Latite's arguments. To the extent that Latite argues that Burcham committed perjury when he testified that he saw the wheelbarrow operator dump tiles, we note that Burcham never so testified. Instead, he testified about where the dump truck was located and how the wheelbarrow operator would have had to have gotten close to the edge to dump the tiles. In his declaration, attached to the motion for summary judgment, Burcham attested that from his investigation, he *learned* that employees had to get close to the edge of the roof to dump the tiles; he never stated that he saw that. Second, that Burcham changed his testimony on cross examination when shown blown-up photographs is irrelevant to the ALJ's finding that Latite violated the regulation because

that finding was based on the objective photographs entered into evidence.

## II.

Latite argues the record contains substantial credible evidence that Latite was in compliance with the applicable safety regulations. It argues that Burcham's photographs show the employees on the portion of the roof where only a safety monitor was required, other than the wheelbarrow operator who fetched an empty wheelbarrow on the portion of the roof that required more safety measures. Latite also points to testimony from its Corporate Safety Director that all of the employees were wearing safety harnesses and that anchors and lanyards were still in place on the larger roof. Latite also argues that it was operating in conformance with the recommendations of the OSHA special task force for the removal of tile from sloped roofs in South Florida.

"To prove a violation of an OSHA standard, the Secretary [of Labor] must show by a preponderance of the evidence that (1) the cited standard applies, (2) there was noncompliance with its terms, (3) employees had access to the violative conditions, and (4) the cited employer had actual or constructive knowledge of those conditions." *Sec'y of Labor v. Southwestern Bell Tele. Co.*, 19 BNA OSHC 1097, 1098, 2000 WL 1424806 (OSHRC No. 98–1748, 2000).

Latite was cited for violating 29 C.F.R. § 1926.501(b)(10), which provides:

> Roofing work on Low-slope roofs. Except as otherwise provided in paragraph (b) of this section, each

employee engaged in roofing activities on low-slope roofs, with unprotected sides and edges 6 feet (1.8 m) or more above lower levels shall be protected from falling by guardrail systems, safety net systems, personal fall arrest systems, or a combination of warning line system and guardrail system, warning line system and safety net system, or warning line system and personal fall arrest system, or warning line system and safety monitoring system. Or, on roofs 50–feet (15.25 m) or less in width (see appendix A to subpart M of this part), the use of a safety monitoring system alone [i.e. without the warning line system] is permitted.

Here, the Latite employees were working on a roof that contained two sections, one of which was over 50 feet in width, and all of which were over 6 feet high. That portion of the roof over 50 feet in width was subject to the requirement of having "guardrail systems, safety net systems, personal fall arrest systems, or a combination of warning line system and guardrail system, warning line system and safety net system, or warning line system and personal fall arrest system, or warning line system and safety monitoring system." The photographs do not show any of those features and thus Latite was in violation of the regulation. While Latite's Corporate Safety Director testified about the presence of lanyards and anchors, he did not point them out on any of the many photos in evidence and could not testify about whether they were being used because he arrived at the construction site after

20-14793          Opinion of the Court               7

the employees descended.  The ALJ found him not credible and this Court must defer to the ALJ's credibility determinations unless plainly wrong.  *Stone & Webster Const., Inc. v. U.S. Dep't of Lab.*, 684 F.3d 1127, 1133 (11th Cir. 2012) ("[t]he substantial evidence standard limits the reviewing court from deciding the facts anew, making credibility determinations, or re-weighing the evidence").  In light of that determination, his testimony will not provide substantial evidence.

The Secretary can establish that the employees had access to the violative condition by showing that the employee was actually exposed to the cited condition or that access to the condition was reasonably predictable.  *Sec'y of Labor v. Phoenix Roofing, Inc.*, 17 BNA OSHC 1076, 1079 (No. 90-2148, 1995), *aff'd*, 79 F.3d 1146 (5th Cir. 1996) (unpublished).

> In order for the Secretary to establish employee exposure to a hazard she must show that it is reasonably predictable either by operational necessity or otherwise (including inadvertence), that employees have been, are, or will be in the zone of danger. . . . the inquiry is not simply into whether exposure is theoretically possible.  Rather, the question is whether employee entry into the danger zone is reasonably predictable.

*Sec'y of Labor v. Fabricated Metal Prod., Inc.*, 18 O.S.H. Cas. (BNA) ¶ 1072 (O.S.H.R.C. Nov. 7, 1997).  Here, the ALJ noted that previous Commission cases had recognized that the inquiry was fact-intensive and that the zone of danger could exceed six feet.

The photographs showed that employees were moving along the roof that had no safety system and that the safety monitor was not observing them. Although Latite argues that there was no evidence that the employees were near the edge of the roof, we agree with the ALJ that it was reasonably predictable that employees would come within the zone of danger of the unguarded roof. Finally, Latite had actual knowledge of the conditions because the Safety Coordinate was on the site, as found by the ALJ.

III.

Next, Latite argues that the Secretary failed to produce substantial evidence to support the repeat violation classification. It argues that its previous violations were not substantially similar.

"This Court has held that a violation is 'repeated' for purposes of 29 U.S.C.A. § 666(a) if (1) the same standard has been violated more than once and (2) there is a 'substantial similarity of violative elements' between the current and prior violations." *D & S Grading Co. v. Sec'y of Lab.*, 899 F.2d 1145, 1147 (11th Cir. 1990) (quoting *Bunge Corp. v. Sec'y of Lab.*, 638 F.2d 831, 837 (5th Cir. 1981)). Further, the Secretary bears the burden of showing the requisite substantial similarity of violative elements. *Id.* at 1148. Once substantial similarity is shown, the burden shifts to the employer to disprove substantial similarity or prove any affirmative defense it may have. *Id.* We review the ALJ's decision for abuse of discretion. *Id.* In *D & S Grading*, we upheld a finding of repeat violation where the nature of the conditions and hazards were similar. *Id.*

Here, the ALJ found that three previous citations were substantially similar violations so as to warrant the designation of repeat citation.  In the first, OSHA cited Latite for violating the same provision and characterized it as exposure to a fall hazard while working on a roof without fall protection.  In the second, OSHA cited Latite for violating 1926.501(b)(1), and the ALJ described it as exposing employees to a fall hazard while working on an unprotected roof without any means of fall protection.  There, the employees walked on a sloped roof between two ladders without safety monitors and without wearing fall protection.  In the third, OSHA cited Latite for violating 1926.501(b)(13) for exposing employees to a fall hazard of 16 feet without the use of conventional fall protection.  The ALJ noted that in each case, Latite exposed its employees to fall hazards from roofs ranging from 16 to 50 feet by failing to comply with fall protection requirements.  We cannot conclude that the ALJ abused her discretion: the three previous citations, as here, involved employees working on dangerously unprotected roofs without any safeguards.

## IV.

Finally, Latite argues that the assessed penalty was unsupported by substantial evidence in the record.  Specifically, it argues that no explanation was ever provided as to why the Secretary had agreed to no penalty in two previous cases but imposed a $71,137 penalty here.  Further, the six-month delay in issuing the citation belies any alleged concern about the seriousness of the citation.

When determining an appropriate penalty, the Commission considers the following factors: (1) the employer's size of business; (2) the gravity of the violation; (3) the good faith of the employer, and (4) the employer's history of previous violations.  29 U.S.C. § 666(j).   In *D & S Grading* we affirmed the ALJ's penalty based on its reasoning that the company had continued to provide unsafe working conditions despite numerous citations and fines.  899 F.2d at 1148.

Here, the ALJ explained that the Secretary based the penalty amount on Latite's history of similar violations and lack of good faith based on its failure to remedy the problem.  Further, the Secretary determined the severity of the violation to be "high-greater" because the type of injury that could result from the violation was death.  Further, it determined the probability of injury was high because of the "length of time, the height and number of people involved."  With those factors, the Secretary multiplied the penalty by five, which was the number of times Latite had been cited.

We agree with the ALJ that the penalty was warranted. Latite continued to engage in practices that violated regulations and put its employees at risk of death or injury.  That this particular citation did not involve conditions as dangerous as others that Latite did not receive fines for is of no moment: apparently previous lenity resulted in Latite's sense of impunity.   Further, the seriousness of the citation cannot be adjudged by how long the agency took in issuing its citation because we have no way assessing how busy the agency was at that time or what information was required to make the citation.

20-14793          Opinion of the Court          11

For the foregoing reasons, the decision of the ALJ is affirmed.

AFFIRMED