**Robert B. REICH, United States Secretary of Labor, Petitioner, Cross–Respondent,**

v.

**TRINITY INDUSTRIES, INC., Respondent–Cross Petitioner,**

**Occupational Safety and Health Review Commission, Respondent.**

No. 92–2559.

United States Court of Appeals, Eleventh Circuit.

March 22, 1994.

---

John Shortall, U.S. Dept. of Labor, Washington, DC, for appellant.

Robert E. Rader, Jr., Dallas, TX, for appellee.

Before HATCHETT and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

HATCHETT, Circuit Judge:

The Secretary of Labor petitions this court for review of the Occupational Safety and Health Commission's determination that Trinity Industries, Inc. did not "willfully" violate 29 U.S.C. § 654(a) and applicable regulations. We hold that the Commission misinterpreted the law, and Trinity willfully violated the Occupational Safety and Health Administration's (OSHA's) regulations.

## BACKGROUND

Noise at the work place is a serious health problem. *E.g.,* 46 Fed.Reg. 4078 (January 16, 1981). In enacting the Occupational Safety and Health Act of 1970 (the Act), Con-

gress aspired to deal with this and other health problems and "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions. ..." 29 U.S.C. § 651(b) (1993). As part of Congress's goal to ·eradicate health hazards at the work place, the Secretary of Labor promulgated specific regulations in an effort to protect employees from unhealthy noise levels. The Secretary, pursuant to 29 U.S.C. §§ 654(a) & 655, requires that employers establish and maintain a hearing conservation program when information indicates that employee noise exposures equal or exceed an eight hour time-weighted average sound level of eighty-five decibels. 29 C.F.R. § 1910.95(c) (1992).

Periodic audiometric testing makes it possible to determine hearing loss resulting from noise in the work place. An audiogram is a record of an individual's hearing sensitivity and indicates how intense or loud a sound must be before the individual perceives it. With periodic audiometric testing, it is possible to document hearing loss and implement protective measures to prevent further loss. Pursuant to section 1910.95, an employer subject to the hearing conservation program must develop and implement a monitoring system at the plant, and perform baseline (initial) audiograms of employees against which subsequent audiograms may be compared. After the initial test, the employer must obtain a new audiogram at least annually and compare it to the initial audiogram. If the annual audiogram reveals a specified change in an employee's hearing threshold, further procedures are required.

Trinity in 1983, and the Secretary upon inspection in 1987, found that employee noise exposures at the Jacksonville, Florida plant equaled or exceeded an eight hour time-weighted average of eighty-five decibels. Trinity's Corporate Environmental and Safety Director, Jerry Riddleş, testified that Trinity performed noise tests at the Jackson-

ville plant in 1983 that resulted in readings that "the time-weighted average of employee exposure was over 85 dBA [decibels]," but decided not to provide monitoring as required.[1] Riddles also testified that in 1983 Trinity was aware of OSHA's regulations under section 1910.95.

As an alternative, Trinity required its production employees to wear hearing protection devices all the time regardless of noise levels at any particular time or place. Trinity reasoned that because noise levels in different parts of its plants varied from day-to-day depending on the particular job, and employees moved in and out of the noisier areas frequently, its alternative hearing conservation program was superior to the program outlined in OSHA regulations. According to Trinity, the hearing protectors attenuated employee exposure to below 75 decibels.

## PROCEDURAL HISTORY

The Secretary brought this enforcement action against Trinity. 29 U.S.C. § 658(a). This action· was the result of OSHA's inspection of Trinity's work place in 1987 at the Jacksonville, Florida plant. The Secretary issued a citation charging that Trinity willfully violated the Act, in failing to comply with occupational safety and health standards. 29 U.S.C. § 654(a)(2). The secretary specifically charged that Trinity failed to develop and implement an employee hearing monitoring program, pursuant to 29 C.F.R. § 1910.-95(d)(1), and did not obtain baseline and annual audiograms from employees exposed to an eight hour time-weighted average of 85 decibels, pursuant to 29 C.F.R. § 1910.95(g).

Trinity contested the citation, and on June 26, 1990, an administrative law judge (ALJ) determined that the Secretary erred in classifying the citation as "willful." The ALJ determined that substantial evidence did not support the Secretary's finding, and labeled the citation as "nonserious." The Secretary

---

1. Riddles clarified his testimony that "the time-weighted average of employee exposure was over 85 dBA." Riddles explained that Trinity employees worked in areas of noise exposure at or above an eight hour time-weighted average of eighty-five decibels, but because the employees wore hearing protection devices the employees were not exposed to such high levels. This clarification is immaterial in light of 29 C.F.R. § 1910.95(c)(1) which provides that "employee noise exposures shall be computed ... without regard to any attenuation provided by the use of personal protective equipment."

appealed the ALJ's decision to the Occupational Safety and Health Review Commission (Commission).

The Commission rejected the Secretary's determination that the citation was willful and agreed with the ALJ that Trinity's violation was "other than serious," based upon its findings that Trinity acted in good faith and the employees were "largely protected." After the Commission's ruling, the Secretary filed this appeal. Trinity filed a cross-petition requesting that this court classify the citation as *de minimis*. The Secretary's motion to dismiss Trinity's cross-petition has been carried with the case.

## CONTENTIONS OF THE PARTIES

The Secretary contends that the Commission improperly applied the law when determining that Trinity did not willfully violate the Act, and that Trinity's intentional disregard of OSHA's regulations constitutes a willful violation. The Secretary also contends that Trinity's cross-petition is untimely. Trinity contends that the Commission correctly determined that it did not willfully violate OSHA regulations. Trinity also contends that this court should consider its cross-petition as timely filed in the interests of justice.

## ISSUES

This appeal presents the following issues: (1) whether the Commission properly applied the test for a "willful" violation as that term is used in 29 U.S.C. § 666(a); and (2) whether this court has jurisdiction over Trinity's cross-petition.

## DISCUSSION

I. *Willful violation*

■ This court reviews the Commission's order to determine whether it is in accordance with the law. *Horne Plumbing & Heating Co. v. OSHA,* 528 F.2d 564, 567 (5th Cir.1976) (citing to 5 U.S.C.A. § 706(2)(A)). The precise question is whether the Commission properly defined and applied the term "willful" as used in section 666 of the Act in reviewing the Secretary's citation.

The Commission acknowledged that Trinity was aware of section 1910.95 and its requirements: yet, Trinity intentionally chose to proceed at variance with the requirements. In determining whether Trinity willfully violated the Act, the Commission gave great weight to Trinity's belief that its alternative program was superior to the program outlined in the OSHA regulations and made compliance with section 1910.95 redundant and unnecessary. The Commission also considered relevant the apparent protection afforded Trinity employees through the alternative program. In effect, the Commission allowed (1) Trinity's good faith belief that its system was superior to the OSHA program and (2) the lack of evidence showing any employee harm from the alternative system to compel a finding that Trinity's failure to comply with the regulations was not willful.

Title 29 U.S.C. § 666(a), titled **"Willful or repeated violation,"** provides that "[a]ny employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $10,000 for each violation." The Secretary issued the citation at issue under this provision. The Act does not define the term "willful" or "willfully," and thus, we employ pertinent case law to discover the meaning of "willful."

■ The definition of "willful" in this circuit is, in its simplest form, "an intentional disregard of, or plain indifference to, OSHA requirements." *Georgia Elec. Co. v. Marshall,* 595 F.2d 309 (5th Cir.1979). Both parties agree that this is the proper definition and test for determining whether an employer "willfully" violated the Act. Trinity interprets this language as requiring a lack of good faith, or, stated in the inverse, a finding of good faith on the part of the employer precludes willfulness. Trinity argues that if an employer knows of OSHA regulations applicable to it, but considers compliance either not feasible or useless to protect its employees, the employer may disregard the regulations and create an alternative program in an attempt to accomplish

what the OSHA regulations aim to do, and not be in willful violation.

In *Georgia Elec. Co.*, 595 F.2d at 309, the Fifth Circuit interpreted the term "willful" in section 666.[2] The Georgia Electric Company petitioned the court to set aside the Commission's order upholding the Secretary's citation alleging a willful violation of an OSHA regulation. The court found that Georgia Electric was aware of its duty to conform to OSHA's requirements, yet "never made any effort" to so comply. *Georgia Elec. Co.*, 595 F.2d at 319. With these facts, the court stated:

> The Secretary of Labor ... urges us to adopt [the Commission's] definition of willful conduct. Under this definition, willful means an act done voluntarily, with either an intentional disregard of, or plain indifference to, OSHA requirements. *General Electric Co.*, 1977, 5 OSHD 1448, 3 Empl. Safety & Health Guide (CCH) (1977–78 Occup. Safety and Health Dec.) ¶ 21,853....

The majority of circuits that have considered the question of the meaning of willfulness have adopted the [Commission's] approach. For example, in *Intercounty Construction Co. v. OSHRC*, 4 Cir., 1975, 522 F.2d 777, *cert. denied*, 1976, 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82, the Fourth Circuit upheld a finding of a willful violation where an employer had failed to shore up a trench as required by OSHA regulation. The court emphasized the employer's disregard of the OSHA standard:

> We agree with the position adopted by the Commission in interpreting the statute that "willful" means action taken knowledgeably by one subject to the statutory provisions in disregard of the action's legality. No showing of malicious intent is necessary.
>
> ....
>
> Regardless of any good faith belief that the work area remained safe, the fact is that the company knowingly chose not to comply with the OSHA regulations and requirements. That de-

cision was a willful action in violation of the law.

*Id.* at 779–80.

In *Western Waterproofing Co. v. Marshall*, 8 Cir., 1978, 576 F.2d 139, *cert. denied*, 439 U.S. 965, 99 S.Ct. 452, 58 L.Ed.2d 423, the Eighth Circuit took much the same approach. The court rejected the employer's defense that although it had failed to comply with a particular OSHA standard, it had nevertheless met the 'underlying purpose' of the standard:

> Western's officials substituted their own judgment for the provisions of the standards and therefore cannot escape the conclusion that they acted voluntarily with either intentional disregard of, or plain indifference to, the requirements of the Act.

*Id.* at 143. Finding that the evidence showed a 'conscious decision' not to use the required protective devices, the court held that this showed a willful violation of the OSHA standard.

*Georgia Elec. Co.*, 595 F.2d at 317–18.

Thus, for OSHA purposes, we define a willful violation as one involving voluntary action, done either with an intentional disregard of, or plain indifference to, the requirements of the statute.

*Georgia Elec. Co.*, 595 F.2d at 319.

The language above repudiates and makes irrelevant the employer's good faith disregard of the regulations, or the employer's belief that its alternative program meets the objectives of OSHA's regulations. In this case, the Commission did just the opposite of what *Georgia Elec. Co.* dictates, and deemed of great importance Trinity's good faith disregard of section 1910.95 and its belief that its alternative hearing protection program met OSHA's objectives in promulgating section 1910.95.

The Fifth Circuit rejected the employer's argument that a showing of bad purpose is necessary to support a finding of a willful violation. The court first reasoned that the definition of "willful" in itself rejects a requirement of a showing of bad purpose. The

**2.** Under the ruling in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), Fifth Circuit decisions rendered prior to October 1, 1981, are binding precedent in this court.

court also reasoned that a bad purpose test would

> unduly restrict OSHA's authority to impose its most severe sanction. We do not feel that such a result would well serve the congressional purpose of creating a strong and effective federal job safety statute. Instead, we feel that the purposes of the statute are better served by adopting the test suggested by the Secretary.

*Georgia Elec. Co.,* 595 F.2d at 319.

■ Pursuant to 29 U.S.C. § 654(a)(2), each employer "shall comply with occupational safety and health standards promulgated under this chapter." The language of section 654 is mandatory. An employer's good faith belief that its alternative program is superior to OSHA's requirements is irrelevant to the question whether Trinity "willfully" violated section 654. The Act "unambiguously forecloses such discretion" on the part of employers to decline compliance and proceed with an alternative program without justification or approval. *Donovan v. Capital City Excavating Co., Inc.,* 712 F.2d 1008, 1010 (6th Cir.1983); *accord F.X. Messina Construction Corp. v. Occupation Safety and Health Review Commission,* 505 F.2d 701, 702 (1st Cir.1974). "[A]n employer must follow the law even if it has a good faith belief that its own policy is wiser." *RSR Corp. v. Brock,* 764 F.2d 355, 363 (5th Cir.1985).[3]

The Act provides a mechanism for an employer to avoid compliance with OSHA regulations and instead provide its own alternative program to accomplish the same goal as the regulations. This mechanism is a variance or exemption from OSHA's mandatory requirements for employers.

> Any affected employer may apply to the Secretary for a rule or order for a variance from a standard promulgated under this section. . . . The Secretary shall issue such rule or order if he determines on the

record . . . that the proponent of the variance has demonstrated by a preponderance of the evidence that the . . . methods . . . used or proposed to be used by an employer will provide employment and places of employment to his employees which are as safe and healthful as those which would prevail if he complied with the standard.

29 U.S.C. § 655(d).

Trinity did not apply for a variance until August 15, 1988, about two months after the Secretary issued this citation. According to Trinity, it filed a request for variance from compliance with section 1910.95 on the grounds that changing conditions and employee mobility made it infeasible to comply, and Trinity's alternative program better protected employees. The Secretary declined to act on Trinity's application for a variance, based upon the pending review of the Jacksonville citation. Trinity asserts that it waited so long to apply for a variance because of the pendency of other actions involving citations.[4]

If Trinity desired to implement and operate its alternative program within the law, Trinity should have sought a variance from the Secretary prior to the issuance of a citation. For a period of at least four years, Trinity was aware of OSHA requirements and the applicability of the requirements to its Jacksonville plant. We cannot excuse Trinity from failing to either comply with OSHA regulations or apply for a variance, based upon the pendency of other citations in the administrative and judicial systems.

In its briefs before this court, Trinity contends that compliance with section 1910.95 was infeasible. In its answer to the Secretary's complaint before the Commission, Trinity alleged that compliance with section 1910.95 was "not feasible or possible." Neither the ALJ nor the Commission discusses

---

**3.** The appeal before this court does not concern a situation where the employer argues that it had a good faith belief that its program complied with OSHA. Rather, this is a case where an employer decided to implement an alternative program rather than in good faith make an effort to comply with the OSHA regulations.

**4.** In 1986, the Secretary issued an "other than serious" citation to Trinity for its failure to comply with OSHA hearing conservation regulations in its Enid, Oklahoma, plant. In February, 1988, while the Enid, Oklahoma, case was pending, the Secretary issued a "willful" citation to Trinity's West Memphis, Arkansas, plant for Trinity's failure to include audiometric testing.

in an express or open manner the feasibility of Trinity's compliance as an issue. Both the ALJ and the Commission discuss at great length Trinity's belief that its alternative program affords employees better protection than section 1910.95. But again, this does not serve as an excuse for noncompliance with applicable OSHA regulations. *RSR Corp.,* 764 F.2d at 363; *accord Hackney, Inc. v. Secretary of Labor,* 895 F.2d 1298, 1300 (10th Cir.1990).

The Commission in its decision found that Trinity "provided no basis for not complying with the terms of the standard." Inherent in this finding is the feasibility of compliance. The burden of showing infeasibility was on Trinity. "[W]here a specific duty standard contains the method by which the work hazard is to be abated, the burden of proof is on the employer to demonstrate that the remedy contained in the regulation is infeasible under the particular circumstances." *E.g., Ace Sheeting & Repair v. Occupational Safety and Health Review Commission,* 555 F.2d 439, 441 (5th Cir.1977).

Trinity failed to present sufficient evidence to carry its burden of proof that it was infeasible to comply with section 1910.95, that is, to develop and implement a monitoring and audiometric testing program. Thus, we affirm the Commission's finding that Trinity provided no basis for not complying with the terms of section 1910.95.

The Secretary established a prima facie violation of section 1910.95, in showing that Trinity knew of the OSHA requirements, knew that its Jacksonville plant exposed employees to at or above an eight hour time-weighted average of eighty-five decibels, and knowingly disregarded the OSHA requirements. *Cleveland Consolidated, Inc. v. Occupation Safety and Health Review Commission,* 649 F.2d 1160, 1165 (5th Cir. Unit B July 9, 1981) (prima facie violation established if Secretary can show applicability of OSHA regulation and employer's failure to utilize regulation). Trinity's safety director Riddles testified that in 1983 (1) Trinity was aware of OSHA's requirements, (2) employees' exposure to noise at the Jacksonville plant was at the level where section 1910.95 applied to Trinity and (3) Trinity voluntarily and intentionally chose not to comply with section 1910.95.

Applying the test for "willful," we agree with the Secretary that Trinity willfully violated the requirements of section 1910.95. Trinity knew of the requirements and their applicability, yet intentionally disregarded them in violation of the Act. The Commission erred in applying a good faith test to determine whether the citation was willful. It is of no moment that Trinity considered its alternative program wiser or superior to section 1910.95 in protecting employees. Thus, we reverse the Commission's decision and remand for a reassessment of penalties.

## II. *Trinity's cross-petition*

■ The Secretary contends this court should dismiss Trinity's cross-petition for lack of jurisdiction, based upon Trinity's failure to file its petition within the statutorily prescribed sixty-day period. Pursuant to 29 U.S.C. § 660(a), "[a]ny person adversely affected or aggrieved on an order of the Commission ... may obtain a review of such order in any United States Court of Appeals ... by filing in such court within sixty days following the issuance of such order...." The Commission issued its decision on April 22, 1992. The sixtieth day for filing an appeal from the Commission's decision was June 21, 1992. The Secretary petitioned this court for review of the Commission's decision on June 18, 1992. Trinity filed its cross-petition on June 29, 1992.

Trinity acknowledges untimely filing pursuant to section 660(a), but requests this court to accept the cross-petition as timely pursuant to Federal Rule of Appellate Procedure 4(a) (1987). Rule 4(a)(3) provides that a party, other than the initial appellant, may file a notice of appeal "within 14 days after the date on which the first notice of appeal was filed." Trinity filed its cross-petition within fourteen days of the Secretary's petition for review. Nevertheless, Federal Rule of Appellate Procedure 20 (1987) makes clear that rule 4 does not apply to review of agency orders. Therefore, Trinity is subject to, and limited by, the sixty day period contained at section 660(a).

We acknowledge the undesirable side effects this has upon a party in Trinity's position.

After weighing the relative benefits and detriments of an agency decision, a party may well decide that further litigation is not worthwhile because the adverse aspects of the decision do not outweigh the good—at least to any appreciable degree. Consequently, that party will choose not to ask for appellate review. However, if its adversary files a petition for review, the situation changes and poses a risk that the favorable aspects of the agency action may be eliminated by the appeal. At that point, sound strategy would dictate filing a cross-petition that would seek to eliminate the unfavorable aspects of the administrative decision. If, however, the adversary has waited until the last minute and there is no longer time for filing a cross-petition, the other party has been 'sandbagged,' whether inadvertently or otherwise. The only defense against such a scenario is the filing of a protective petition for review. That tactic should not be encouraged because it is inefficient and may, in fact, lead to appeals that otherwise would not have been taken.

*Reich v. Occupational Safety and Health Review Commission,* 998 F.2d 134, 137 (3d Cir.1993). We agree with the Third Circuit that failing to provide for a cross-appeal procedure in this situation, as exists in rule 4(a)(3), leads to wasteful and nonproductive litigation, and we "welcome an examination of this problem and possible resolution by the advisory committee on appellate rules." *Reich,* 998 F.2d at 137. We dismiss Trinity's cross-petition for lack of jurisdiction. *See e.g., Sundale Assoc., Ltd. v. City Nat'l Bank of Miami,* 786 F.2d 1456 (11th Cir.1986) (appeal dismissed as untimely).

## CONCLUSION

We reverse the Commission's decision and remand to the Commission for a reassessment of penalties resulting from Trinity's willful violation of the Act. We dismiss Trinity's cross-petition for lack of jurisdiction.

REVERSED and REMANDED.

RONEY, Senior Circuit Judge, dissenting:

I respectfully dissent. The Commission's decision that Trinity's violation was not willful is based on its finding that Trinity did not *disregard* the hearing standards in good faith, but that Trinity *interpreted* the standards in good faith and believed, in light of that interpretation, that it was not in violation.

With this finding, the Commission correctly noted the controlling legal principle: good faith is *sometimes* relevant in determining whether an OSHA violation is willful. A violation is not willful, for example, "if the employer had a good faith opinion that the violation conformed to the requirement of the standard." *Donovan v. Mica Construction Co.,* 699 F.2d 431, 432 (8th Cir.1983). The obvious corollary to that rule, and the one the Commission applied in this case, is that a violation is not willful if an employer's reasonable interpretation of a regulation creates a good faith belief that it was not in violation. *General Motors Corp., Electro Motive Div.,* 14 O.S.H.C. 2064 (BNA) (Rev.Comm.1991); *see also McLaughlin v. Union Oil Co. of California,* 869 F.2d 1039, 1047 (7th Cir.1989) ("A violation is not willful when it is based on a nonfrivolous interpretation of OSHA's regulations.").

Although the court here asserts that this appeal "does not concern a situation where the employer argues that it had a good faith belief that its program complied with OSHA," this is contrary to the findings of the Commission. Trinity's good faith belief that it met OSHA's requirements is, in fact, the key to this case. The Commission emphasized that the Secretary and Trinity had "an obvious difference of opinion as to how to comply with the standards." It went on to explain that although Trinity knew its program did not comply *literally* with OSHA's regulation, the only reason for the variance was Trinity's good faith interpretation of the regulation, which led it to believe that under the circumstances literal compliance was not required to avoid a violation:

Trinity had a good-faith, though erroneous, belief that the only purpose of audiometric testing was to determine which employees had suffered a loss of hearing severe

enough to require hearing protection. Because its program required hearing protection before any loss occurred, Trinity believed that its program provided protection superior to that required by the Secretary, thereby rendering audiometric testing redundant and, therefore, unnecessary.

Thus the Commission found that Trinity had merely misinterpreted, not disregarded, the regulation.

In each case argued by the Secretary and relied on by the court, the employer either completely ignored the OSHA safety standards, *Georgia Elec. Co. v. Marshall,* 595 F.2d 309 (5th Cir.1979); *Intercounty Construction Co. v. Occupational Safety & Health Rev. Comm.,* 522 F.2d 777 (4th Cir. 1975), *cert. denied,* 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976); *Donovan v. Capital City Excavating Co., Inc.,* 712 F.2d 1008 (6th Cir.1983); *F.X. Messina Const. Corp. v. Occupational Safety & Health Rev. Comm.,* 505 F.2d 701 (1st Cir.1974), implemented an alternative program that did not even remotely resemble those standards, *Western Waterproofing Co. v. Marshall,* 576 F.2d 139 (8th Cir.), *cert. denied,* 439 U.S. 965, 99 S.Ct. 452, 58 L.Ed.2d 423 (1978), or unilaterally decreed the standard invalid, *RSR Corp. v. Brock,* 764 F.2d 355, 363 (5th Cir.1985). None involved the misinterpretation of a regulation. Rather, in each case the employers simply disregarded the regulation at issue. Such behavior was properly deemed willful notwithstanding any good faith belief that the employees were safe.

Here, in contrast, Trinity carefully considered the regulations and attempted to provide what, in its view, was greater worker protection than OSHA required. Trinity's goal was to create an environment where audiograms would be unnecessary because there was no high noise level exposure and therefore no need to monitor for hearing loss. Although this underestimates the purpose of the audiograms, it simply does not reflect a disregard of the regulations. The Commission recognized that not every knowing deviation from a regulation reflects disregard or indifference.

It is important to note that the Commission did not excuse Trinity's noncompliance.

It rejected Trinity's argument that no citation was warranted, stating that an employer must comply fully with a regulation even if it believes it imposes an unnecessary requirement. The Commission merely determined that under the circumstances Trinity's violation was "other than serious", not willful.

Because the Commission applied the correct rule of law in this case, the only question this Court should consider is whether there is substantial evidence supporting the Commission's conclusion that Trinity interpreted the regulation in good faith. In my view, the Commission's decision is amply supported and should be affirmed.