POLLAK, District Judge,
dissenting:
I agree with the court’s careful legal analysis, and I substantially concur in the court’s narration of the facts. But I do not agree with the court’s application of the law to the facts. Therefore I respectfully dissent.
The Occupational Safety and Health Act (“OSHA”) contemplates three grades of violations of the statute and its attendant regulations — “willful”; “serious”; and “not ... of a serious nature.” 29 U.S.C. § 666. An employer who is found by the Occupational Safety and Health Review Commission (“the Commission”), after a hearing before an administrative law judge, to have committed a violation which is “not .of a serious nature” may be assessed a civil penalty in an amount not to exceed $7,000. 29 U.S.C. § 666(c). The maximum civil penalty for a “serious” violation is also $7,000, but assessment of a civil penalty of some amount is obligatory. 29 U.S.C. § 666(b). A “willful” violation calls for a civil penalty of from $5,000 to $70,000. 29 U.S.C. § 666(a). When a “willful” violation causes the death of an employee, the employer is subject to criminal prosecution, with a maximum sentence of six months’ incarceration and a fine of $10,000, or a maximum sentence of one year’s incarceration and a $20,000 fine for a subsequent conviction. 29 U.S.C. § 666(e).
OSHA defines a “serious” violation as one where “there is a substantial probability that death or serious physical harm could result ... unless the employer did *1358 not, and could not with the exercise of reasonable diligence, know of the presence of the violation.” 29 U.S.C. § 666(k). The statute does not define the more flagrant “willful” violation. As the court points out, in this Circuit the governing case law definition of “willful” violation is that articulated for the Fifth Circuit by Judge Brown in Georgia Electric Co. v. Marshall, 595 F.2d 309, 318 (5th Cir.1979) and carried forward in Reich v. Trinity Industries, Inc., 16 F.3d 1149, 1152 (11th Cir.1994): — “intentional disregard of, or plain indifference to, OSHA requirements.”
The court today sustains the conclusion of an administrative law judge, adopted by the Commission, that in the case at bar the employer, J.A.M., committed a “willful” violation of OSHA. The record made before the administrative law judge establishes that J.A.M.’s supervision of the work site was bumbling and, at times, incoherent. The record unquestionably supports a determination that J.A.M. violated the applicable OSHA regulation — and would, in my judgment, support a characterization of the violation as “serious.” But I do not find in that record substantial evidence of “intentional disregard for, or plain indifference to, OSHA requirements” — the hallmark of a “willful” violation. For this reason I part company with my colleagues.
The OSHA regulation that J.A.M. was charged with violating is 29 C.F.R. § 1926.416(a)(1):
No employer shall permit an employee to work in such proximity to any part of an electric power circuit that the employee could contact the electric power circuit in the course of work, unless the employee is protected against electric shock by deenergizing the circuit and grounding it or by guarding it effectively by insulation or other means.
The regulation is one which calls on the employer to exercise judgment: — is the work site one in which an employee must “work in such proximity to any part of an electric power circuit that the employee could contact the electric power circuit in the course of work”?
On November 5, 1997, J.A.M.’s iron-workers began moving bars of rebar from the first to the third story of the three-story structure. What made this a problematic enterprise was the presence, along the structure’s east wall, of energized power lines strung about ten feet above the third story. To avoid the power lines, the rebar was, as the court explains, “pass[ed] ... through a second-floor window and then through a four-foot hole located between the second and third floor. The rebar was passed up length-wise, and was angled at a forty-five degree angle opposite from the building’s east wall and away from the energized lines, although it was tall enough that it could have touched the energized lines had it been stood up and/or leaned toward the east wall.”
The operation having apparently been completed on November 5, the hole was closed.
The next day — November 6 — when it became apparent that more rebar was required on the third floor, the movement of rebar resumed. But this time, with the hole closed, the rebar was, as the court explains, “rais[ed] to the third floor along the outside of the east wall” — a very risky maneuver which, as the court notes, came to a halt when “the ironworkers’ union foreman ... was informed by an electrician of the severe danger of working along the east wall close to the energized lines.” This precipitated a meeting of management officials and union representatives. There is, to be sure, disagreement as to what course of action was agreed upon— passing rebar up the north wall (the J.A.M. understanding) or cutting a new hole between the second and third floors (the union understanding). The one thing that the disagreement plainly establishes is that management and union alike recognized that the rebar which was still to be raised to the third floor should not be passed up the east wall. Carlos Diaz, J.A.M.’s job superintendent, then ordered *1359 a carpenter to take rebar that was stacked on the east side of the structure and move it to the north side (presumably, in anticipation of its being raised to the third floor).
On the following day — November 7 — the raising of rebar to the third floor was to resume. Diaz directed foreman Larry Williams to pass rebar up the north side. But Williams did not follow Diaz’s directions. Williams and his crew raised rebar up the east side. And Williams died.
The court “find[s] this case similar to Georgia Electric Co." — the case in which the Fifth Circuit defined OSHA willfulness as “intentional disregard of, or plain indifference to, OSHA requirements.” In arguing that the two cases are “similar” the court points out that in Georgia Electric:
a utility company was cited for willfully violating a highway construction safety standard that prohibits the operation of a crane within ten feet of an energized electrical line. A worker was electrocuted when the steel light pole that he was attempting to erect came into contact with an energized line. The company’s foreman, knowing of. the hazard involved, nonetheless allowed the worker’s crew to attempt to erect the pole. The Court, noting that the employer had failed to take steps to acquaint its supervisory personnel with the requirements of the standard, despite knowing of “its obligation to conform to the' act,” affirmed the citation, finding that the employer was indifferent to OSHA’s requirements and exhibited “disregard for the safety of its employees.” Id. at 319-20. The Court rejected the employer’s argument that, by instructing its employees to use their “common sense” and not get “too close” to the energized lines, it established adequate work safety rules.
Georgia Electric’s, definition of willfulness is binding law for this court. And the finding of willfulness sustained by Judge Brown and his colleagues was, so it seems to me, a proper application of that binding legal rule to the facts of record in Georgia Electric. But, with all respect, I do not think the facts yielding a finding of willfulness in Georgia Electric are “similar” to the facts in the case at bar. In the case at bar the applicable OSHA regulation — 29 C.F.R. § 1926.416(a)(1) — is a generalized admonition:
No employer shall permit an employee to work in such proximity to any part of an electric power circuit that the employee could contact the electric power circuit in the course of work ...
By contrast, the OSHA regulation at issue in Georgia Electric — 29 C.F.R. § 1926.550(a)(15) — was a flat directive as to the space to be maintained between power lines and machinery or equipment:
For lines rated 50 kV. or below, minimum clearance between the lines and any part of the crane or load shall be 10 feet ...
There was no room for doubt as to the meaning, or the applicability to any given scenario, of the regulation. However, as Judge Brown explained, “[djespite- its awareness of its obligation to conform to the Act and regulations promulgated thereunder, the Company never made any effort to acquaint its supervisory personnel with the OSHA standards. Not one employee with responsibility for the Highway No. 82 project was aware of the minimum distance : requirements of § 1926.550(a)(15).” 595 F.2d at 319. Given the substantial difference between the applicable regulations, together with the fact that in the case at bar the tragic death of Larry Williams resulted from his ignoring the employer’s express.instructions, I suggest that what the court perceives as similarity between the willfulness issue in Georgia Electric and the willfulness .issue in the case at bar is illusory. There is, in my judgment, less similarity here than meets the eye.
However, there is another aspect of Georgia Electric which seems to me remarkably similar to the present case. In *1360 carefully detailing the events that preceded the fatal accident of July 10, 1974 at issue in Georgia Electric, Judge Brown pointed out that the OSHA regulation the company was found to have violated — 29 C.F.R. § 1926.550(a)(15) — was included in “a copy of the OSHA safety and health regulations for the construction industry,” 595 F.2d at 318, that had been furnished to the employer in April of 1974, approximately three months before the July 10, 1974 accident. Judge Brown explained:
The material was supplied as part of an OSHA investigation of an electrocution that occurred on April 8, 1974, at a Company work site in Albany, Georgia. As a result of that investigation, the Company was cited for allowing an employee to work too near an electric power circuit that had not been de-energized or otherwise guarded. The Company was charged with a serious violation of [29] C.F.R. § 1926.400(c)(1). The charge was uncontested, and the Company paid a $500 fine.

Id.

29 C.F.R. § 1926.400(c)(1) was the lineal ancestor of 29 C.F.R. § 1926.416(a)(1), the regulation at issue in the present case.[1] In the context of Georgia Electric, the Commission adjudged the employer guilty of a “serious” violation for, as Judge Brown put it, “allowing an employee to work too near an electric power circuit” — a “serious” violation that led to an employee’s electrocution. In the case we are considering today, the record amply supports a finding that on November 6, 1997 (the second of the three days, when rebar was “rais[ed] to the third floor along the outside of the east wall”) the employer (to transpose to the present case Judge Brown’s words in Georgia Electric) “allowed employees] to work too near an electric power circuit” — a finding, which, compatibly with the Commission’s assessment of Georgia Electric’s April 8, 1974 misconduct, would surely warrant citation for a “serious” violation.[2] On November 7, 1997 — the next day — foreman Larry Williams was electrocuted when he had his crew pass rebar up the east wall rather than the north wall — but this tragic event came about because Williams acted in direct contravention of his employer’s instructions. I suppose it is arguable that J.A.M.’s failure to monitor the November 7 conduct sufficiently to prevent the tragedy could be deemed a “serious” violation. But not a “willful” one.
I conclude that the evidence before the administrative law judge does not support a finding that J.A.M.’s violation of 29 C.F.R. § 1926.416(a)(1) was “willful.” I am fortified in this conclusion by the fact that, pursuant to the statute, a “willful” OSHA violation that causes the death of an employee gives rise to criminal liability. 29 U.S.C. § 666(e). I am confident that the Congress which crafted OSHA would have viewed J.A.M.’s makeshift methods of raising the rebar with strong disapproval. But I see no reason to suppose that the OSHA Congress would have contemplated that its strong disapproval could be ratcheted up, via an administrative assessment *1361 affirmed by a federal court, to a level of malfeasance that constitutes a crime.
Accordingly, I dissent.

. In addition to the renumbering, there were certain non-substantive verbal changes. The former regulation directed that "[n]o employer shall permit an employee to work in such proximity to any part of an electric power circuit that he may contact the same in the course of his work unless the employee is protected against electric shock by deenergiz-ing the circuit and grounding it or by guarding it by effective insulation or other means." The present regulation has been rendered genderly neutral through (a) the substitution of "the employee" for "he” and (b) the deletion of "his;" in addition, "could” has replaced "may,” and "by effective insulation or other means” has become "effectively by insulation or other means.”

. Lest there be any misunderstanding, I am not arguing that the Fifth Circuit endorsed the Commission’s determination that this earlier dereliction was a “serious” (rather than a "willful”) violation. As Judge Brown’s opinion makes plain, Georgia Electric did not challenge the "serious” citation, so its correctness was not before the Fifth Circuit.