[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 26, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-16462

_____

OSHRC Docket No. 96-01729

FLUOR DANIEL,

Petitioner,

versus

OCCUPATIONAL SAFETY AND HEALTH
REVIEW COMMISSION,
ELAINE L. CHAO, Secretary of Labor,

Respondents.

_____

Petition for Review of an Order of the
Occupational Safety and Health Review Commission

_____

**(June 26, 2002)**

Before BIRCH, MARCUS and CUDAHY[*], Circuit Judges.

MARCUS, Circuit Judge:

Petitioner Fluor Daniel, an engineering and construction company, appeals

an Occupational Safety and Health Review Commission ("OSHRC" or "the

_____

[*]Honorable Richard D. Cudahy, U.S. Circuit Judge for the Seventh Circuit, sitting
by designation.

Commission") decision affirming a safety citation and penalty relating to the company's failure to provide emergency respirators at one of its facilities in Burkville, Alabama. Specifically, Fluor Daniel argues that the OSHRC reached an unreasonable conclusion and abused its discretion when it found (1) that Fluor Daniel violated the Occupational Safety and Health Administration ("OSHA") standard governing respiratory protection, and (2) that Fluor Daniel committed this violation willfully. After thorough review, we conclude that the findings of the OSHRC are supported by substantial evidence and do not constitute an abuse of discretion. Accordingly, we affirm.

## I.

The relevant facts are reasonably straightforward. Fluor Daniel is an engineering and construction company with approximately 30,000 employees worldwide. Between 1985 and 1987, Fluor Daniel was responsible for the construction of a General Electric ("GE") manufacturing facility in Burkville, Alabama. Under a contract with GE, Fluor Daniel has kept employees at the facility since it opened. These employees are responsible for maintenance services and certain additions and modifications to the plant, but they are not directly involved in GE's production.

The Burkville facility contains one waste handling plant and five manufacturing plants, including one that produces resin and one that produces phosgene. As described in a GE material safety data sheet, phosgene is a "poisonous gas [that] has an irritant effect on the eyes, skin, respiratory tract and especially the lungs." In addition to irritation, this potentially fatal, non-flammable gas can cause burns, chest pains, breathing difficulties, lung congestion, dizziness, shock, numbness, vomiting, bluish skin color, chills, and headaches. The resin plant at Burkville is contained in a six-story, open-sided structure located approximately fifty feet east of the phosgene plant. Though separated by a street, the two plants are connected by a pipe rack that holds phosgene-conveying pipes.

On May 22, 1996, Fluor Daniel employees were performing installation work to add a heat exchanger to a caustic scrubbing system on the second floor mezzanine of the resin plant. While they were performing this job, low levels of phosgene vented through the caustic line into the air of the resin plant. When the phosgene was detected, the resin plant was evacuated. Because neither GE nor Fluor Daniel provided emergency escape respirators to the Fluor Daniel employees performing the installation work, none of the Fluor Daniel workers had such respirators during the evacuation. Once they got out of the building, eleven of these employees received examinations from GE's on-site physician, who referred

them to a hospital in Montgomery.  The employees received prophylactic treatment at the hospital, and eight stayed for overnight observation.

The following day, May 23, 1996, OSHA compliance officers began health inspections of the Burkville facility.  As a result of these inspections, the Secretary of Labor ("the Secretary") charged Fluor Daniel with five counts, or "items," of violating OSHA standards by failing to (1) provide adequate respiratory protection to employees during an emergency, (2) create proper alternative emergency action plans, (3) ensure or document that the resin plant employees were trained about the hazards of phosgene, (4) develop safe work practices to control hazards during lockout and tagout procedures, and (5) maintain adequate hot work permits.

Of relevance to this appeal, the emergency respirator regulation in place at the time provided that, "[i]n emergencies, or when controls required by Subpart D of this part either fail or are inadequate to prevent harmful exposures to employees, appropriate respiratory protective devices shall be provided by the employer and shall be used." 29 C.F.R. § 1926.103(a)(1) (1996).[1]  Subpart D, codified at 29 C.F.R. § 1926.55, listed various substances, including phosgene, which should be avoided above certain levels.  The regulation also provided that, for "gas and vapor

---

[1]Section 1926.103(a)(1) was revised in 1998, after this case arose, to make its requirements identical to general industry standards set forth at 29 C.F.R. § 1910.134.  The new regulation is not relevant to this case.

contaminants immediately dangerous to life and health," such as phosgene, the protective devices should include a self-contained breathing apparatus, hose masks with a blower, an air-purifying, full facepiece respirator with a chemical canister, and, for escape only, self-rescue mouthpiece respirators. See 29 C.F.R. § 1926.103, Table E-4 (1996).

An Administrative Law Judge ("ALJ") affirmed the item alleging violations of the respiratory protection and emergency action plan standards, but vacated the remaining three items, assessing a total penalty of $32,500. Notably, with regard to the respiratory protection regulation, the ALJ found that Fluor Daniel willfully violated Section 1926.103(a)(1) by voluntarily disregarding the OSHA requirement that respirators be provided during evacuation and instead relying solely on evacuation to protect its employees.

Fluor Daniel appealed the ALJ's decision to the OSHRC, which affirmed the respiratory protection item and vacated the remaining items.[2] In upholding the respiratory protection count, the OSHRC specifically rejected Fluor Daniel's

---

[2]The OSHRC dismissed the employee training, lockout/tagout, and hot work permit counts on the ground that the Secretary was unable to make a prima facie showing that operations at the plant involved 10,000 pounds or more of a flammable liquid or gas, which is required for the governing regulations to apply. The Commission dismissed the emergency action plan claim because, at that time of the May 1996 incident, no particular OSHA regulation required such a plan.

arguments that it lacked fair notice of the requirements of Section 1926, that the Secretary was estopped from charging a respiratory protection violation, and that there was insufficient evidence to support the finding of a willful violation. After finding that the language of the regulation provided clear notice and that the Secretary was not barred from bringing a respiration protection count merely because it had never brought one against Fluor Daniel before, the Commission explained that the evidence presented to the ALJ showed that Fluor Daniel willfully violated the regulation. Specifically, the Commission held that Fluor Daniel knew about the need to provide respirators during emergencies but instead disregarded the OSHA respirator requirement and decided to rely solely on its policy of evacuating employees in emergency situations. As a result of the willful violation of Section 1926.103(a)(1), the OSHRC assessed Fluor Daniel a penalty of $30,000. The company appealed the Commission's decision to this Court pursuant to 29 U.S.C. § 660.

## II.

OSHRC decisions are entitled to considerable deference on appellate review. Indeed, the statutory command makes this clear: "[t]he findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." 29 U.S.C. § 660(a). We have held that

6

"[s]ubstantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." J.A.M. Builders, Inc. v. Herman, 233 F.3d 1350, 1352 (11th Cir. 2000) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). Moreover, the legal determinations of an agency like the OSHRC are to be overturned only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." 5 U.S.C. § 706(2)(A); see also Reich v. Trinity Indus., 16 F.3d 1149, 1152 (11th Cir. 1994) ("This court reviews the Commission's order to determine whether it is in accordance with the law."). We add that in interpreting OSHA regulations, a reviewing court should defer to the reasonable interpretations of the Secretary of Labor. See Martin v. OSHRC, 499 U.S. 144, 158, 111 S. Ct. 1171, 1179-80, 113 L. Ed. 2d 117 (1991). Finally, an OSHRC finding of willfulness is a finding of fact, see J.A.M. Builders, 233 F.3d at 1352, but the Commission's definition or application of the term is a matter of law. See Reich, 16 F.3d at 1152.

On appeal, Fluor Daniel makes two closely-related arguments. First, the company contends the Commission erred in determining that it had fair notice that its respiratory protection program could be found to violate Section 1926.103(a)(1). Second, Fluor Daniel argues that, even if there was a violation, the OSHRC acted unreasonably in concluding that the violation was willful. In light

of the highly deferential standard for reviewing OSHRC decisions, and based on our review of the entire record, Fluor Daniel's arguments cannot succeed.

## A.

Fluor Daniel argues that it lacked notice Section 1926.103(a)(1) required it to provide emergency respirators because the language of the regulation was vague and because past inspections of the plant by government officials lulled the company into believing that its respiratory protection program was adequate. We are not persuaded.

As an initial matter, Fluor Daniel offers no reason for this Court to conclude that the OSHRC acted contrary to the law when it held that Section 1926.103(a)(1) was not vague. The regulation states, in clear terms, that "[i]n emergencies, or when controls required by Subpart D of this part either fail or are inadequate to prevent harmful exposures to employees, appropriate respiratory protective devices shall be provided by the employer and shall be used." 29 C.F.R. § 1926.103(a)(1). As the Commission held, this standard "provide[d] clear notice that the respiratory protection standard applied to Fluor Daniel's facility" and "plainly required the availability and use of respirators in emergencies or when engineering controls failed." The conduct for which Fluor Daniel was sanctioned was a precise

8

violation of this unambiguous regulation. Although Fluor Daniel stresses that the incident in the resin plant did not involve a failure of engineering controls, the company acknowledges, as it must, that the incident was in fact an emergency and that it did not provide respirators to its employees. Fluor Daniel also does not deny that phosgene is a hazardous gas under Subpart D of the regulation, codified at 29 C.F.R. § 1926.55. Quite simply, we agree with the OSHRC that there was nothing vague or ambiguous about the regulation as applied to Fluor Daniel in this situation.

Because the regulation itself was not vague, Fluor Daniel can prevail only if it succeeds on the claim that the past inspections somehow led the company to believe that it could not be found in violation of the respiratory protection regulation. This argument fails, however, because we cannot disturb the OSHRC's findings of fact unless they are unsupported by substantial evidence. See J.A.M. Builders, 233 F.3d at 1352. And, in this case, substantial evidence supports the Commission's determination that the prior inspections of the Burkville facility did not address the issue of emergency respirators in the resin plant.

The three past inspections on which Fluor Daniel relies are a 1991 OSHA compliance inspection and two subsequent reviews conducted between 1991 and 1996 pursuant to GE's participation in OSHA's Voluntary Protection Program

("VPP").[3]  The evidence strongly supports the Commission's determination that nothing in any of these inspections conveyed to Fluor Daniel the government's approval of the lack of emergency respirators in the resin plant.  First, the 1991 visit addressed only complaints about the lack of adequate emergency respirators in the facility's <u>chlorine</u> plant, where mouthpiece respirators were provided to Fluor Daniel employees, not in the resin plant.  Dennis Bowden, Fluor Daniel's Construction and Site Manager at Burkville from 1985 to 1995, testified before the ALJ he could not recall any discussion of the resin plant with the investigators conducting the 1991 inspection.  The only contrary testimony came from David Herrington of Fluor Daniel's corporate safety group.  Although Herrington expressed an understanding that the 1991 inspection covered the resin plant, the value of his understanding was limited since he had no first-hand knowledge; indeed, he was not working at Burkville at the time.  Moreover, even Herrington

---

[3]The VPP is a cooperative program that allows qualified companies with rigorous safety practices and strong safety records to avoid regularly programmed OSHA inspections.  Even when a company participates in the VPP, OSHA continues to monitor its safety and health practices and, when necessary, to enforce federal standards. <u>See</u> Voluntary Protection Programs to Supplement Enforcement and to Provide Safe and Healthful Working Conditions; Changes, 53 Fed. Reg. 26,339 (July 12, 1988).  The Burkville plant was part of the VPP as a result of GE's participation in the program.

never said that emergency respirators were discussed as part of any inspection of the resin plant in 1991.

The OSHA inspector's notes did indicate that respirators were available and used as needed in 1991, but we see no reason to disagree with the Commission's factual determination that these notes referred only to the chlorine plant, which was the subject of the complaint that led to the 1991 investigation in the first place. The same report that noted the use of respirators expressly stated that the 1991 investigation was limited in scope. As the inspector explained in his report, "a complete inspection of all chemical units was not conducted. . . . [R]eview of the brine operation[4] and BPA [bisphenol A] facility was adequate at this time. . . . Since the chlorine leak occurred in the brine operation, the main portion of the investigation concentrated around this operation." For the same reason, we cannot fault the Commission for failing to place any stock in Bowden's general recollection that the OSHA compliance officer reviewed Fluor Daniel's entire respiratory protection program and found no deficiencies. Simply put, there is substantial evidence to support the Commission's decision that the 1991 inspection did not address emergency respirators in the resin plant, and Fluor Daniel's

---

[4]The terms "brine operation" and "chlorine plant" are used interchangeably. In a brine operation, chlorine is produced by passing an electric current through a solution of brine, or salt dissolved in water.

11

suggestions to the contrary do not compel us to conclude that the Commission's findings were in error.

Similarly, we cannot disturb the Commission's finding that the subsequent VPP inspections did not address Fluor's respiratory equipment. Absolutely nothing in the record shows that resin plant emergency respirators were discussed at either visit, and Fluor Daniel itself points only to Bowden's broad testimony that he told the inspectors that Fluor Daniel had a respiratory protection program in place. As with the 1991 inspection, Fluor Daniel identifies no evidence indicating that OSHA inspectors said or did anything at any time that would have induced the company to believe that it did not need to provide emergency respirators to the resin plant employees. Without such evidence, we cannot disturb the Commission's determination that Fluor Daniel was not misled by past inspections. Therefore, the company cannot prevail on its claim that it lacked notice of the requirements of Section 1926.103(a)(1).

Moreover, even if Fluor Daniel could show that OSHA inspectors considered and failed to issue a citation for the lack of respirators in the resin plant during the 1991 inspection or the VPP visits, the company would still not be able to prevail in the absence of any affirmative approval of the lack of respirators. Fluor Daniel makes no claim that any OSHA officials expressly said that

12

respirators were unnecessary, and mere silence by OSHA inspectors is not enough to support a company's claim that it was lulled into violating a regulation. As the Commission recognized, it is well established by both the Commission and the courts that OSHA's failure to cite an employer during a past inspection does not, standing alone, constitute a lack of fair notice. See, e.g., Donovan v. Daniel Marr & Son Co., 763 F.2d 477, 484 (1st Cir. 1985) ("An employer cannot . . . rely on the Secretary's failure to issue citations."); Cedar Constr. Co. v. OSHRC, 587 F.2d 1303, 1306 (D. C. Cir. 1978) (explaining that allowing companies to rely on lack of citations in prior investigations would "discourage self-enforcement of the Act by businessmen who have far greater knowledge about conditions at the workplaces than do OSHA inspectors."); Sec'y of Labor v. Peterson Bros. Steel Erection Co., 16 O.S.H. Cas. (BNA) 1196, 1201 (OSHRC 1993) ("[I]t is well established that an employer cannot rely on the Secretary's failure to issue a citation.").

The one case that Fluor Daniel cites in support of its position that the absence of citations in prior inspections constitutes a lack of fair notice for future violations is inapposite. In Trinity Marine Nashville, Inc. v. OSHRC, 275 F.3d 423 (5th Cir. 2001), OSHA inspectors cited a company for violating a regulation by using wood-framed electrical plug-in boxes in a shipyard. OSHA withdrew the

citation, but then cited the company again for the same violation eight years later. Because OSHA officials "at least implicitly approved the use of the boxes" by filing, considering, and then withdrawing the earlier citation, id. at 431, the Fifth Circuit determined that the company had a valid claim that it lacked fair notice that it could be cited for an identical violation years later. In this case, unlike in Trinity Marine, there is no evidence that OSHA inspectors ever addressed, let alone approved, the unavailability of respirators in the resin plant. All that exists here, if anything, is past silence by OSHA officials, which cannot be construed as a sign of approval.[5]

In short, there is no basis for us to conclude that the Commission erred in finding that Fluor Daniel had proper notice that it could be held in violation of Section 1926.103(a)(1). The language of the governing regulation was clear, and nothing in either the 1991 inspection or the VPP visits misled Fluor into believing that it was in compliance.

B.

---

[5]Another case cited by Fluor Daniel, Martin v. Miami Indus., 983 F.2d 1067 (6th Cir. 1992) (unpublished table decision), is of no avail. In that case, the Sixth Circuit held that a company did not have proper notice of a violation because the regulation at issue was vague and because OSHA had failed to cite the violation in past inspections. The primary focus of the opinion was the vagueness of the rule, not the past inspections. In the case before this panel, the regulation at issue is not at all vague, as discussed above. Therefore, Fluor Daniel, unlike Miami Industries, was plainly placed on notice of its obligations under the regulation.

14

Fluor Daniel also argues that, even if we uphold the finding of a violation, this Court should vacate the portion of the Commission's decision finding that the violation was willful. Section 666 of Title 29 of the United States Code provides, in relevant part, that an employer who "willfully or repeatedly violates" any OSHA standard, rule, or order, may be assessed a penalty of no more than $70,000 but no less than $5,000 for each willful violation. 29 U.S.C. § 666(a). The statute provides lesser penalties for "serious violations," which occur if an employer knew about and failed to prevent "a substantial probability that death or serious physical harm could result from a condition which exists" in the workplace. 29 U.S.C. § 666(k). The statute provides even lesser penalties for violations deemed not serious. See 29 U.S.C. § 666(c). A court of appeals has the power to reverse a finding of willfulness by the OSHRC and re-classify a violation as either "serious" or "not serious." See, e.g., Babcock & Wilcox Co. v. OSHRC, 622 F.2d 1160 (3d Cir. 1980). Fluor Daniel asks us to do so in this case.

Although Section 666 does not define the terms "willful" or "willfully," we have held that "[t]he definition of 'willful' in this circuit is, in its simplest form, 'an intentional disregard of, or plain indifference to, OSHA requirements.'" Reich, 16 F.3d at 1152 (quoting Ga. Elec. Co. v. Marshall, 595 F.2d 309, 317 (5th Cir. 1979)). In order for a violation to be deemed "willful,"

15

proof must be adduced either that (1) "[the] employer knew of an applicable standard or provision prohibiting the conduct or condition and consciously disregarded the standard," or (2) that, if the employer did not know of an applicable standard or provision's requirements, it exhibited such "reckless disregard for employee safety or the requirements of the law generally that one can infer that . . . the employer would not have cared that the conduct or conditions violated [the standard]."

J.A.M. Builders, 233 F.3d at 1355 (quoting Sec'y of Labor v. Williams Enters., Inc., 13 O.S.H. Cas. (BNA) 1249, 1257 (OSHRC 1987)).

When the Secretary alleges that a violation was willful, a company cannot defend itself by claiming that it acted in good faith. As we explained in Reich, the intentional disregard or plain indifference test "makes irrelevant the employer's good faith disregard of the regulations, or the employer's belief that its alternative program meets the objectives of OSHA's regulations." 16 F.3d at 1153. Allowing a willful violation to be imposed only in cases of bad faith would "unduly restrict OSHA's authority to impose its most severe sanction," and thus undermine "the congressional purpose of creating a strong and effective federal job safety statute." Id. at 1154 (quoting Ga. Elec. Co., 595 F.2d at 319). Quite simply, "[a]n employer's good faith belief that its alternative program is superior to OSHA's requirements is irrelevant to the question whether [a company] 'wilfully' violated [OSHA regulations]." Id. This is because "[a]n employer must follow the law even

16

if it has a good faith belief that its own policy is wiser." Id. (quoting RSR Corp. v. Brock, 764 F.2d 355, 363 (5th Cir. 1985)).

Despite the clear holding in Reich that good faith is not a defense to a willful violation, Fluor Daniel argues that the OSHRC erred by ignoring the company's belief that its program was in compliance with the regulation. The company attempts to distinguish Reich by saying that it truly thought it was following the OSHA rules, unlike the company in that case, which implemented a noise control program that it considered superior to the OSHA program even though it did not fully comply with the regulation. This effort to distinguish our precedent fails, however, because the Commission found that Fluor Daniel officials knew that the company's failure to provide emergency respirators in the resin plant violated Section 1926.103(a)(1). As with the determination that Fluor Daniel committed a violation, we are bound by the Commission's determination as long as it is supported by substantial evidence. See J.A.M. Builders, 233 F.3d at 1352.

The OSHRC's determination that Fluor Daniel acted willfully is supported by substantial evidence. The single most important piece of evidence is Fluor Daniel corporate safety group member Herrington's own testimony that, as early as 1989, he expressed concern about the lack of respirators for Fluor Daniel employees. Knowing that GE provided emergency respirators for GE employees

17

but not for Fluor Daniel employees, Herrington requested that Fluor Daniel change its policy and provide these items. Nevertheless, the company made a deliberate decision not to do so because, according to Herrington, "in the event of an emergency, Fluor Daniel personnel were to immediately evacuate the area[, a]nd therefore, it was not justified or warranted to provide those rescuers for contractor personnel."

As the Commission found, Fluor Daniel made this decision despite clearly knowing about the need for respirators, as evidenced by Herrington's own comments, the unambiguous language of the OSHA regulation, the undisputed recognition of phosgene's dangers, and the fact that there had been a prior emergency at the Burkville facility involving the release of chlorine in 1991. In light of all of this evidence, we cannot conclude that the Commission erred in holding that "Fluor Daniel's deliberate decision not to take basic measures to help employees protect themselves shows plain indifference to employee safety and supports a finding that the violation was willful." While Fluor Daniel may be correct in asserting that other interpretations of the evidence are conceivable, there is sufficient evidence to support the interpretation accepted by the Commission.

Fluor Daniel offers no reason for us to hold that the OSHRC erred in finding deliberate disregard and plain indifference as a matter of fact or law. In fact, the

evidence reveals that this case is similar to Reich, where the company was found to have acted willfully when it substituted its own judgment for that of the regulation. Here, Herrington's testimony reveals that Fluor Daniel officials intentionally opted to ignore OSHA's respiratory protection mandate merely because they believed that evacuating employees was a more efficacious way of protecting workers from a phosgene leak. This substitution of their judgment for OSHA's is plainly barred by our precedent. See Reich, 16 F.3d at 1154. In the end, because we can discern no errors in the Commission's factual findings or legal conclusions, we have no reason to disturb the Commission's holding that the company's violation of Section 1926.103(a)(1) was willful. [6]

_____

[6]As a final note, Fluor Daniel offers no legal support for its contention that the willfulness sanction was arbitrary in light of the fact that OSHA downgraded GE's citation for the same violation from willful to serious. Fluor Daniel points to nothing in this record indicating that GE officials gave the same level of consideration to the question of whether to provide emergency respirators in the resin plant and made the same calculated decision to rely on evacuation as an alternative. The mere fact that an OSHA inspector initially classified GE's violation as willful does not establish, as a matter of fact, that GE officials consciously disregarded the OSHA standard or employee safety. See J.A.M. Builders, 233 F.3d at 1355. For Fluor Daniel, there was powerful evidence on the record indicating that the violation was in fact willful. The key evidence cited by the OSHRC in this regard was the testimony of Herrington, a safety official for Fluor Daniel, not for GE. In the absence of any evidence, let alone equally powerful evidence relating to GE, we cannot say that GE's violation involved the same intentional disregard or plain indifference exhibited by Fluor Daniel. We simply have no factual basis to find that the Commission acted arbitrarily by downgrading GE's violation but not Fluor Daniel's.

Accordingly, we AFFIRM the OSHRC's determination that Fluor Daniel

willfully violated 29 C.F.R. § 1926.103(a)(1).

AFFIRMED.