[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13417

_____

Agency No. 08-0866

SOUTHERN PAN SERVICES,

Petitioner,

versus

U.S. DEPARTMENT OF LABOR,

Respondent.

_____

Petition for Review of a Decision of the
Occupational Safety and Health Review Commission

_____

(April 11, 2017)

Before ROSENBAUM, JULIE CARNES, and GILMAN,[*] Circuit Judges.

PER CURIAM:

_____

[*]Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

This case comes before the Court on appeal from the Occupational Safety and Health Review Commission's ("Commission") final decision finding that Appellant Southern Pan Services ("Southern Pan") willfully violated two safety regulations promulgated pursuant to the Occupational Safety and Health Act ("OSHA").  We find no error.

**I.**

Because the facts of this case have been thoroughly recounted in the Commission's decisions, we do not repeat them in detail here.  To briefly summarize, this case arises out of the collapse of a partially constructed, six-story, poured-in-place concrete parking garage in Jacksonville, Florida.  When the garage "pancaked" to the ground on December 6, 2007, one Southern Pan employee was killed and others were seriously injured.

Southern Pan was hired as a subcontractor on the construction project.  As part of its work, Southern Pan was specifically tasked with obtaining the shoring and reshoring[1] drawings for the garage.  Southern Pan was then responsible for building and installing the shoring and reshoring formwork to support the wet

---

[1] A "shore" is defined by OSHA regulations as a "supporting member that resists a compressive force imposed by a load."  29 C.F.R. § 1926.700(b)(7).  It is placed on the level immediately below that which is currently being built and is used to support the formwork before and during the concrete pour.  "Reshoring" is defined as "the construction operation in which shoring equipment (also called reshores or reshoring equipment) is placed, as the original forms and shores are removed, in order to support partially cured concrete and construction loads."  29 C.F.R. § 1926.700(b)(6).  Reshoring is placed on the completed levels below and does not support the structure, but carries the load of the wet concrete placed above.

2

concrete loads during the construction process and placing the concrete loads for some of the concrete pours (although not the one that was being poured at the time of the accident).

At the time of the garage's collapse, Southern Pan had switched to the 1-over-2 shoring method, resulting in Southern Pan having removed the shoring and reshoring from the first three levels of the garage. It had done so in contravention of the engineering drawings at the site, which showed shoring and reshoring extending to the ground. When shoring and reshoring extends to the ground, the weight of any newly poured concrete loads is transferred through the formwork and is not carried by the structural elements of the partially constructed garage. Once the shoring and reshoring is removed from the lower levels, though, the structure itself must bear the weight of any newly poured wet concrete.

On December 6, 2007, as another subcontractor was pouring the concrete for a portion of the sixth floor of the garage, the structure became unable to support the added weight of the newly poured wet concrete, in the absence of the shoring and reshoring continuing to the ground. The garage collapsed, an employee died, and other employees sustained numerous injuries.

The Secretary of Labor ("Secretary") investigated the incident and on June 2, 2008, cited Southern Pan for two willful violations of OSHA. In the first willful violation, the Secretary found that Southern Pan violated 29 C.F.R. § 1926.701(a)

3

by failing to "have a qualified person determine if the formwork . . . would be capable of supporting the additional load of the wet concrete, exposing the employees to a structural collapse hazard."  In the second, the Secretary found Southern Pan to have willfully violated 29 C.F.R. §1926.703(a)(2) for failing to have all "[d]rawings or plans, including all revisions, for the . . . formwork (including shoring equipment) . . . available at the jobsite."[2]  Over the course of several written decisions, the Commission ultimately affirmed the willful-violation citations and assessed a total penalty of $125,000.00 against Southern Pan.

On appeal to this Court, Southern Pan raises four issues.  First, Southern Pan challenges the Commission's application of 29 C.F.R. § 1926.701(a), arguing that the regulation does not apply to Southern Pan because it was not the employer "directly responsible for the concrete operations" at the time of the garage's collapse.  Second, Southern Pan argues that 29 C.F.R. § 1926.703(a)(2) did not require the creation of drawings showing the 1-over-2 shoring method.  Third and fourth, Southern Pan challenges the Commission's decisions that Southern Pan willfully violated each of 29 C.F.R. § 1926.701(a) and 29 C.F.R. §1926.703(a)(2), arguing that both findings of willful violations are not supported by substantial evidence.

---

[2] The Secretary also cited Southern Pan for two "serious" violations of OSHA, but the Commission vacated both of these citations, and they are not before this Court on appeal.

4

## II.

Commission decisions "are entitled to considerable deference on appellate review." *Fluor Daniel v. Occupational Safety & Health Review Comm'n*, 295 F.3d 1232, 1236 (11th Cir. 2002). We review the Commission's findings of fact to determine whether they are supported by substantial evidence, which is "more than a scintilla." *J.A.M. Builders, Inc. v. Herman*, 233 F.3d 1350, 1352 (11th Cir. 2000) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). We have noted that the Commission's finding of willfulness is a finding of fact. *Fluor Daniel*, 295 F.3d at 1236.

As for the Commission's legal determinations, we review them for whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Like our review of the Commission's factual findings, this is a "highly deferential standard" of review. *Fluor Daniel*, 295 F.3d at 1236.

We have carefully reviewed the administrative record, considered the parties' arguments, and heard oral argument in this case. We now conclude that the Commission correctly applied 29 C.F.R. § 1926.701(a) to Southern Pan and that substantial evidence supports the Commission's determination that Southern Pan willfully violated 29 C.F.R. § 1926.701(a) and 29 C.F.R. § 1926.703(a)(2).

## A.

With respect to Southern Pan's first challenge, we affirm the Commission's decision applying 29 C.F.R. § 1926.701(a) to Southern Pan as an "exposing employer." The Commission's decision concluded that Southern Pan had violated § 1926.701(a) when "construction loads were placed on a concrete structure or portion of a concrete structure without the employer having determined, based on information received from a person who was qualified in structural design, that the structure or portion of the structure was capable of supporting the loads." Southern Pan argues that 29 C.F.R. § 1926.701(a) should not apply to it because the Secretary's preamble to the final rule places responsibility for employee safety with the "person directly responsible for the concrete operations." *See* Concrete and Masonry Construction Safety Standards, 53 Fed. Reg. 22,612-01, 22,617. Here, the parties agree that the "person directly responsible for the concrete operations" was not Southern Pan.

But as the Commission's decision emphasizes, and as we agree, this language in the rule's preamble does not preclude application of the Commission's multi-employer worksite doctrine (also referred to as the "exposing-employer doctrine") to this case. As the Commission noted, "long-standing Commission precedent hold[s] that an employer whose own employees are exposed to a hazard or violative condition—an 'exposing employer'—has a statutory duty to comply

with a particular standard even where it did not create or control the hazard." *See Anning-Johnson Co.*, 4 BNA OSHC 1193, 1198-99 (No. 3694, 1976).

Here, the Commission correctly found that Southern Pan's employees were exposed to the violative condition at the time of the garage's collapse. As an exposing employer, then, Southern Pan was required under OSHA to "do what [was] 'realistic' under the circumstances to protect its employees from the hazard to which a particular standard is addressed even though literal compliance with the standard may [have been] unrealistic." *Id.* at 1199. Because Southern Pan did not undertake realistically available safety measures to protect its employees, the Commission correctly found that Southern Pan had violated § 1926.701(a).

The Fifth Circuit's decision in *Southeast Contractors, Inc. v. Dunlop*, 512 F.2d 675 (5th Cir. 1975),[3] does not preclude our application of 29 C.F.R. § 1926.701(a) to Southern Pan under the exposing-employer doctrine. The single-paragraph, per curiam opinion in *Southeast Contractors* refers favorably to former OSHA Chairman Moran's dissent in that case, which Southern Pan argues supports its position. In its entirety, our predecessor court's opinion in *Southeast Contractors* states:

> It is unnecessary that we decide the constitutionality of
> the Occupational Safety and Health Act of 1970 and its

---

[3] This Court is bound by the decisions issued by the Fifth Circuit prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

7

enforcement procedures established by sections 5, 6, 8, 9, 10, 11, 12, and 17, which matter is also pending and under submission before another panel of this Court in *Atlas Roofing Company, Inc. v. Secretary of Labor*, No. 73-2249. We are in agreement with the well-reasoned dissent of Chairman Moran of the Occupational Safety and Health Review Commission in this matter, and especially with that portion pertaining to the general rule that a contractor is not responsible for the acts of his subcontractors or their employees; accordingly, that the tractor driver was not an employee of respondent. Therefore, respondent was not using the motor vehicle involved in this case at the time of the accident within the meaning of 29 C.F.R. § 1926.-601(b)(4), and the majority ruling of the Commission is erroneous.

*Id.* at 675.

Chairman Moran's dissent, as referenced in *Southeast Contractors*, states that "there can be no violation of the Act by a respondent for failure to comply with a standard which charges some other employer with the duty of implementing the standard," *Southeast Contractors, Inc.*, 1 BNA OSHC 1713, 1716 (No. 1445, 1974). But *Southeast Contractors* was decided in 1975, which was before the Commission articulated the current exposing-employer doctrine in *Anning-Johnson* in 1976. *See Anning-Johnson Co.*, 4 BNA OSHC at 1198-99. And after *Anning-Johnson*, the Fifth Circuit concluded that the exposing-employer doctrine was reasonable. *See Central of Ga. R. Co. v. Occupational Safety & Health Review Comm'n*, 576 F.2d 620, 624 (5th Cir. 1978) (stating that "we think that the Commission's allocation of burdens [in *Anning-Johnson*] is appropriate").

8

Applying the exposing-employer doctrine, Southern Pan could have easily taken realistic measures to protect its employees from the hazard to which the standard in § 1926.701(a) is addressed—namely, complying with the shoring and reshoring drawings. The Commission did not abuse its discretion in applying the exposing-employer doctrine to Southern Pan under these circumstances.

**B.**

Having determined that the standard in 29 C.F.R. § 1926.701(a) applies to Southern Pan as an exposing employer, we must next consider whether the Commission's finding that Southern Pan willfully violated 29 C.F.R. § 1926.701(a) rests on substantial evidence. After thorough consideration, and for all of the reasons discussed in the Commission's decision, we find that it does.

First, substantial evidence underlies the Commission's finding that Southern Pan did not take reasonable measures, under the circumstances, to protect its employees from the hazard, particularly since (1) Southern Pan knowingly removed shoring and reshoring from the first three levels of the garage in deviation from the only engineering drawings it had; and (2) Southern Pan thereafter knowingly failed to provide inspectors with accurate drawings in order to determine if the structure could handle the additional load of wet concrete.

Further, substantial evidence also supports the Commission's classification of Southern Pan's violation as willful. This Court has explained that a willful

9

violation is, "in its simplest form, 'an intentional disregard of, or plain indifference to, OSHA requirements.'" *Fluor Daniel*, 295 F.3d at 1239.

Here, the Commission relied on testimony from Southern Pan supervisors showing that they knew that Section 1926.701(a) required them to determine before each pour that the garage structure could withstand the added weight of newly poured wet concrete loads. The testimony also showed that these supervisors knew that the lives of Southern Pan employees depended on these updated load-bearing calculations, yet the supervisors failed to make the calculations before removing the shoring and reshoring that preceded the pouring of more wet concrete onto the structure. In addition, the ALJ discredited one supervisor's testimony that the shoring was removed as the result of a miscommunication. The ALJ found that testimony from other supervisors showed that that was not the case. In short, substantial evidence supports the Commission's finding that Southern Pan knew it needed revised load-bearing calculations once it removed the shoring and reshoring from the first three levels of the garage under OSHA standards but that Southern Pan voluntarily chose not to prepare such calculations.

## C.

We also affirm the Commission's finding that Southern Pan willfully violated 29 C.F.R. § 1926.703(a)(2). First, the Commission did not act arbitrarily

or capriciously in affirming the Secretary's citation of Southern Pan under § 1926.703(a)(2) for failing to maintain all plans, *including revisions*, on the jobsite. Southern Pan did not have written plans at the jobsite calling for its switch to 1-over-2 shoring and the resulting removal of shoring and reshoring from the first three levels of the garage.  As the parties have stipulated, the only plans at the jobsite showed shoring and reshoring to the ground.  So Southern Pan's removal of the shoring and reshoring from the first three levels was in clear deviation from the plans at the jobsite.  Southern Pan's switch to the 1-over-2 shoring method was a "revision" for which § 1926.703(a)(2) plainly requires an updated drawing or plan.

As the Commission reasonably explained, "[a]n employer's obligation to create a drawing or plan that accurately represents the existing formwork is clear from the language of § 1926.703(a)(2), which requires that the '[d]rawings or plans, includ[e] all revisions.'  Indeed, OSHA has recognized that this provision is intended to prevent accidents that could result from improperly erected formwork, and written plans enable this protective purpose to be met."

Southern Pan argues that it should not be held liable under 29 C.F.R. § 1926.703(a)(2) because it complied, alternatively, with the standard laid out in 29 C.F.R. § 1926.703(e) for testing the strength of concrete before removing shoring. The Commission, however, concluded that § 1926.703(a)(2) and § 1926.703(e) are

11

not alternative standards but, rather, impose different obligations and work in tandem. We agree.

As the Commission correctly explained, § 1926.703(e) addresses only the situation where shoring and reshoring is removed and no subsequent loads are then added. Section 1926.703(e)(2), for example, states that "[r]eshoring shall not be removed until the concrete being supported has attained adequate strength to support its weight and all loads *in place* upon it." 29 C.F.R. § 1926.703(e)(2). This standard says nothing about the circumstances at issue here—where reshoring was being removed and then *more* loads were added—and is not a substitute for the requirement to have accurate written plans on the jobsite. Mere compliance with testing the strength of concrete under one circumstance is not a substitute for a jobsite requirement addressing a wholly separate circumstance.

Second, we agree with the Commission that Southern Pan had the requisite knowledge of its Section 1926.703(a)(2) violation. Unlike the facts in *Comtran Group, Inc. v. United States Department of Labor*, 722 F.3d 1304, 1316 (11th Cir. 2013), here, the facts do not support an understanding that a single supervisor went "rogue." Rather, multiple Southern Pan supervisors knew that the shoring and reshoring was being removed from the first three levels of the garage in contravention of the only engineering plans at the site, and they ratified this conduct.

12

For example, testimony from Southern Pan supervisors shows that they visited and inspected the site multiple times over the course of the 46 days during which the shoring and reshoring was removed;  they knew that revised plans did not exist at the site to reflect their removal of the shoring and reshoring;  and yet they failed to order any revised plans.  So substantial evidence underlies the Commission's finding that Southern Pan had "eyes and ears" at the site, and this knowledge can be fairly imputed to Southern Pan.

Finally, substantial evidence supports the Commission's classification of Southern Pan's violation of 29 C.F.R. § 1926.703(a)(2) as willful.  Under the substantial-evidence standard, this Court does "not reweigh or re-examine the credibility choices made by the factfinder."  *See Kelliher v. Veneman*, 313 F.3d 1270, 1277 (11th Cir. 2002).  Here, the Commission heard testimony from Southern Pan employees and supervisors and determined that, despite knowing the importance of having written shoring plans at the site and knowing that the only plans at the site showed shoring and reshoring to the ground, multiple Southern Pan supervisors oversaw and ordered the removal of the shoring and reshoring on the first three levels of the garage over many days.  The Commission cited this abundant testimony in support of its finding that the Southern Pan supervisors possessed "willful states of mind."  We find no error.

13

For the foregoing reasons, we affirm the Commission's determination that Southern Pan willfully violated 29 C.F.R. § 1926.701(a) and 29 C.F.R. § 1926.703(a)(2).

**AFFIRMED.**

14