[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-14484

_____

NDC CONSTRUCTION COMPANY,

Petitioner,

*versus*

SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF
LABOR,

Respondent.

_____

Petition for Review of a Decision of the
Occupational Safety and Health Review Commission
Agency No. 17-1689

_____

Before LAGOA, BRASHER, and TJOFLAT, Circuit Judges.

PER CURIAM:

NDC Construction Company ("NDC") seeks review of an administrative law judge's ("ALJ") decision imposing a penalty for violations of 29 C.F.R. § 1926.501(b)(13), an Occupational Safety and Health Administration ("OSHA") regulation concerning fall protection at construction worksites. Following a bench trial, the ALJ found that NDC failed to exercise reasonable diligence. The ALJ's decision became a final order of the Occupational Safety and Health Review Commission (the "Commission") when the Commission denied NDC's petition for discretionary review. NDC now seeks review of the ALJ's decision from this Court.

In its petition for review of the final order, NDC primarily asserts two arguments. First, NDC contends that it cannot be held liable for violating § 1926.501(b)(13) because NDC was held liable under OSHA's multi-employer citation policy, which, according to NDC, is an unpromulgated agency rule or the product of impermissible agency policymaking, or both. Second, NDC asserts that the ALJ erred in finding that NDC did not exercise reasonable diligence.

After careful review, and with the benefit of oral argument, we conclude that, under 29 U.S.C. § 660(a), NDC is barred from raising its arguments concerning the validity of OSHA's multi-employer citation policy and that the ALJ's findings are supported by

substantial evidence. Accordingly, we deny NDC's petition for review and affirm the ALJ's decision.

## I.    FACTUAL BACKGROUND

### A.  The Construction Worksite and NDC's Role as General Contractor

NDC was the general contractor for a multiacre residential construction project in Bradenton, Florida. The construction project involved building fourteen structures, including multifamily residential housing units.

As the general contractor, NDC managed the construction worksite. While NDC had employees stationed at the worksite, its employees did not perform the construction work. Instead, NDC's employees managed the construction process and oversaw various subcontractors who performed the construction work.

NDC oversaw between thirty and forty subcontractors at the height of construction. NDC neither trained subcontractors in connection with worksite safety nor conducted its own safety-specific inspections. But NDC's onsite employees conducted daily worksite-walkthroughs and notified subcontractors, either by phone or in writing, of worksite safety violations they happened to observe.

Under the agreements NDC had with its subcontractors, the subcontractors were required to provide NDC with a copy of their safety manuals and to provide documentation of weekly safety meetings. NDC also had the contractual authority to require

subcontractors to abate safety violations within seventy-two hours and NDC could "make the necessary corrections" if a safety hazard was not abated by its subcontractors. And NDC could remove subcontractors and sub-subcontractors, as well as the subcontractors' employees, from the worksite for safety violations.

## B.  OSHA Inspections

On April 5, 2017, two OSHA inspectors visited the worksite. Upon entering the worksite, the OSHA inspectors observed four fall-protection-related safety violations—i.e., violations of 29 C.F.R. § 1926.501(b)(13).[1] The OSHA inspectors later learned that these safety violations involved workers that were employed by NDC's subcontractors or sub-subcontractors.

The first safety violation involved a worker who was "doing sheeting work"—i.e., laying pieces of plywood—on the roof of a building without "any kind of protection against a fall." The second safety violation involved a worker on a stepladder, on an open-sided balcony without safety railings, who was not wearing a "personal fall arrest system." The third safety violation involved two workers on a one-story building that were working without fall protection systems in place. And the fourth safety violation involved a worker, who was not wearing a harness and who was not

---

[1] As relevant to this case, under 29 C.F.R. § 1926.501(b)(13), "[e]ach employee engaged in residential construction activities 6 feet (1.8 m) or more above lower levels shall be protected by guardrail systems, safety net system, or personal fall arrest system. . . ."

"tied off," on a third-story balcony that did not have a safety railing or safety net.

The OSHA inspectors reported these observations to NDC's on-site superintendent and manager, and an NDC employee informed NDC's subcontractors that OSHA was on-site. The OSHA inspectors then walked around the worksite a second time and spoke to various employees. During their second walkthrough, the OSHA inspectors did not observe any additional safety hazards. While many workers were no longer working during OSHA's subsequent walkthrough, the workers the OSHA inspectors did observe were either not working on elevated surfaces or were wearing personal fall protection equipment. But, in talking to workers at the worksite, the OSHA inspectors learned that workers "had been working all day without fall protection" and "at no time did they use fall protection."

The OSHA inspectors returned to the worksite on April 7, 2017. They did not observe any safety violations during that inspection.

## II.   PROCEDURAL BACKGROUND

After further investigation, OSHA issued a citation and notification of penalty to NDC for the four violations of 29 C.F.R. § 1926.501(b)(13) that the OSHA inspectors observed. The citation proposed a penalty of $8,873. Because NDC had failed to submit documents to demonstrate that the violations were abated, OSHA also requested proof of abatement. NDC contested the citation,

and the case proceeded to trial to determine whether NDC was liable for the four safety violations.

## A.  Trial

At trial, NDC stated that "[u]nlike many, many contractors that have come before this Commission . . . , [NDC is] not asking you to destroy the multi-employer work site doctrine."  Instead, NDC asserted that it acted in a reasonably diligent manner and abated the relevant safety violations.

NDC's employees testified that they notified their subcontractors when they observed safety hazards at the worksite and held meetings with subcontractors to discuss "any safety issues that were brought up."  NDC's employees further testified that all of the safety hazards that they observed were immediately abated by their subcontractors, including the safety violations OSHA identified.  But NDC's employees also testified that they did not always follow up with subcontractors to ensure that safety hazards were, in fact, abated.  And NDC did not maintain records indicating that the [s]afety violations were abated.

Evidence admitted at trial suggested that the fall-protection-related safety violations arose before, and persisted after, the OSHA inspections.  For example, on several occasions leading up to the OSHA inspections, NDC notified its subcontractors that balconies did not have safety rails.  And at a meeting held on April 11, 2017, approximately one week after the OSHA inspections, NDC

notified its subcontractors that "[s]afety rails continue[d] to be in-sufficient."

## B. The ALJ's Decision

Following trial, the ALJ issued its decision and held that NDC violated § 1926(b)(13) and that NDC could be held liable, as a controlling employer under OSHA's multi-employer citation policy, because NDC exercised supervisory control over the worksite and its subcontractors. In so doing, the ALJ held that NDC had, at least, constructive knowledge of the violations OSHA identified because the violations were "open and obvious." And the ALJ held that NDC did not exercise reasonable diligence.[2]

As relevant to this case, the ALJ found that NDC did not take reasonable measures to prevent safety violations at the worksite. The ALJ noted that NDC was aware that certain subcontractors frequently violated safety standards and that one of its subcontractors committed "repeated fall protection violations." The ALJ further found that NDC did not monitor or discipline these subcontractors to prevent additional fall protection violations. And the ALJ found that NDC never confirmed whether subcontractor employees "received fall protection training, or whether they had fall

---

[2] NDC, in its petition for review, does not contest that it was a controlling employer or that it had knowledge of the safety violations OSHA cited. Instead, NDC's arguments pertain to whether it can be held liable as a controlling employer, because controlling employer liability is a by-product of OSHA's multi-employer citation policy, and whether NDC exercised reasonable diligence.

protection equipment" and that NDC largely relied on its subcontractors to comply with OSHA safety standards despite knowledge of their repeated violations.

The ALJ also found that NDC could have detected the relevant safety violations, which were "open and obvious," and that "NDC did not ensure that fall hazards were abated immediately or whether or not hazards were resolved at all." While the ALJ acknowledged that NDC conducted walkthroughs and notified subcontractors of safety violations, the ALJ found that NDC did not "believe that looking for safety issues was its responsibility" and that, contrary to NDC's assertions, certain fall hazards were not abated. The ALJ further found that NDC did not keep track of safety violations or abatement efforts.

The ALJ concluded that NDC did not effectively monitor for safety violations and that NDC's abatement efforts were ineffective. Based on these findings, the ALJ imposed a penalty of $7,986.

### C. NDC's Petition for Commission Review

NDC filed a petition for discretionary review under 29 C.F.R. § 2200.91. Specifically, NDC asked the Commission to review five issues concerning whether the ALJ: (1) erred in finding that NDC did not exercise reasonable diligence; (2) disincentivized other general contractors from engaging in reasonable efforts to ensure worksite safety; (3) erred in concluding that NDC was required to implement a "graduated system of enforcement" and discipline its subcontractors; (4) impermissibly expanded the duty

owed by general contractors under OSHA's multi-employer citation policy; and (5) erred in holding that OSHA did not need to define "what would have constituted compliance for NDC." But NDC did not challenge the validity of OSHA's multi-employer worksite doctrine in its petition.

The Commission declined to review the ALJ's decision. Therefore, the ALJ's decision became a final order of the Commission. *See* 29 U.S.C. § 661(j). This timely appeal followed.

## III.    STANDARD OF REVIEW

Commission "decisions are entitled to considerable deference on appellate review." *Fluor Daniel v. Occupational Safety & Health Rev. Comm'n*, 295 F.3d 1232, 1236 (11th Cir. 2002). "[T]he legal determinations of an agency . . . are to be overturned only if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law.'" *Id.* (alteration in original) (quoting 5 U.S.C. § 706(2)(A)). And, under 29 U.S.C. § 660(a), "[t]he findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *J.A.M. Builders, Inc. v. Herman*, 233 F.3d 1350, 1352 (11th Cir. 2000) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)).

## IV.    ANALYSIS

On appeal, NDC asserts two arguments.  First, NDC asserts that it could not be held liable as a controlling employer under OSHA's multi-employer citation policy because the policy is an unpromulgated agency rule or the product of impermissible agency policymaking, or both.  Second, NDC asserts that it exercised reasonable diligence and that the ALJ failed to consider whether NDC reasonably abated the safety violations.  We consider NDC's arguments in turn.

## A.   29 U.S.C. § 660(a) and NDC's Arguments Concerning OSHA's Multi-Employer Citation Policy

OSHA's multi-employer citation policy "provides guidance to OSHA inspectors as to when it may be appropriate to cite a particular employer" for a violation of an OSHA safety standard at a worksite with more than one employer.  *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 737 (5th Cir. 2018) (citing Occupational Safety & Health Admin., CPL 02-00-124, Multi-Employer Citation Policy (1999)).  NDC asserts that the policy is an invalid interpretation of 29 U.S.C. § 654(a)(2) and is the product of impermissible agency rulemaking or an unpromulgated legislative rule, or both.[3]

But under 29 U.S.C. § 660(a), "[n]o objection that has not been urged before the Commission shall be considered by the

---

[3] Under 29 U.S.C. § 654(a)(2), employers "shall comply with occupational safety and health standards promulgated under this chapter," which include standards "reasonably necessary or appropriate to provide safe and healthful employment and places of employment."  29 U.S.C. §§ 652(8), 654(a)(2).

court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." Section 660(a) thereby prevents parties from raising arguments in federal court that were not raised before the Commission absent "extraordinary circumstances." *Power Plant Div., Brown & Root, Inc. v. Occupational Safety & Health Rev. Comm'n*, 659 F.2d 1291, 1295 (5th Cir. Unit B 1981)[4] ("[Under] 29 U.S.C. § 660(a)[,] . . . issues raised for the first time in the court of appeals shall not be considered."), *reh'g granted and opinion modified*, 673 F.2d 111 (5th Cir. Unit B 1982); *see also Am. Airlines, Inc. v. Sec'y of Labor*, 578 F.2d 38, 41 n.7 (2d Cir. 1978) ("The simple answer to the contention that the regulation was improperly promulgated is that the objection was not raised before the Commission. Accordingly, American has waived its right to raise it here."). "[I]n cases where the Commission declines to review the ALJ decision," appellate courts have "uniformly held that [they] lack jurisdiction over objections not raised in the" petition for discretionary review. *Frank Lill & Son, Inc. v. Sec'y of Lab.*, 362 F.3d 840, 844 (D.C. Cir. 2004) (quoting *A.J. McNulty & Co. v. Sec'y of Lab.*, 283 F.3d 328, 332 (D.C. Cir. 2002)).

Thus, before we can address the merits of NDC's arguments, we must ensure that NDC either raised these arguments in

---

[4] Decisions issued by Unit B of the former Fifth Circuit are binding precedent in the Eleventh Circuit. *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

its petition for discretionary review or that NDC's failure to do so was "excused because of extraordinary circumstances." § 660(a).

### 1. Whether NDC Raised its Arguments in its Petition for Discretionary Review

As noted, NDC raised five issues in its petition for discretionary review. The validity of OSHA's multi-employer citation policy was not one of those five issues. NDC, however, asserts that the issue it raised concerning OSHA's "failure to define what would have constituted compliance for NDC under the circumstances and how NDC's conduct was deficient" sufficiently alerted the Commission that NDC was challenging the validity of the multi-employer citation policy. But that argument was specific to the contours of the duty owed by general contractors—i.e., NDC argued that OSHA failed to identify "how often NDC should [have] insepct[ed] its subcontractors," the "limits of NDC's responsibility over its subcontractors," and "what consequences a general contractor must hand down in order to entitle itself to a defense against multi-employer liability." NDC did not assert that OSHA's multi-employer citation policy was itself invalid or that NDC could not be held liable for violating an OSHA standard in its capacity as a controlling employer or general contractor.

Indeed, NDC's petition did not address OSHA's interpretation of § 654(a)(2) or the procedural validity of the multi-employer citation policy. And throughout the proceedings below, NDC maintained that it did "not desire to litigate the validity of the multiemployer doctrine." We cannot ignore these assertions and

interpret the five issues that NDC did raise in a manner that is not supported by NDC's petition. *See Power Plant Div.*, 659 F.2d at 1295 (holding that the Court would not review "[f]undamental legal questions" not raised before the Commission "particularly . . . where, as here, a party has affirmatively misled the Commission as to its position on an issue"); *see also United States v. Ross*, 131 F.3d 970, 988 (11th Cir. 1997) ("It is 'a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party.'" (quoting *Crockett v. Uniroyal, Inc.*, 772 F.2d 1524, 1530 n.4 (11th Cir. 1985))). Therefore, we conclude that NDC failed to raise its arguments concerning the validity of OSHA's multi-employer citation policy in its petition for discretionary review.

2. *Whether NDC's Failure to Raise its Arguments is Excused Because of Extraordinary Circumstances*

Because NDC failed to raise its arguments concerning the validity of OSHA's multi-employer citation policy before the Commission, we can only review NDC's arguments if "the failure or neglect" was "excused because of extraordinary circumstances." § 660(a). NDC contends that it did not raise arguments concerning the validity of the multi-employer citation policy in its petition because 29 C.F.R. § 2200.91(d)— the regulation concerning petitions for discretionary review—prevented it from raising these arguments. Specifically, NDC asserts that "the Commission's own rules of procedure forbid the incorporation of legal memorandum or briefs into Petitions for Discretionary Review."

Resolution of this case does not require us to decide whether the Commission's rules of procedure may constitute extraordinary circumstances because § 2200.91(d) did not prevent NDC from raising its arguments. While NDC is correct that petitions should not "incorporate by reference a brief or legal memorandum," § 2200.91(d) only prevents petitioners from relying on a separate "brief or legal memorandum" to support an issue or argument. NDC was not prohibited from objecting to the legal validity of OSHA's multi-employer citation policy directly in its petition for discretionary review. Indeed, § 2200.91(d) directs petitioners to "state . . . [w]hether the [ALJ's] decision raises an important question of law" or whether the "decision is contrary to law."

Because NDC has failed to satisfy its burden to show that extraordinary circumstances excused its failure to raise them, we cannot consider the arguments NDC has made with respect to the validity of OSHA's multi-employer citation policy.[5]  *See* § 660(a); *see, e.g.*, *L.R. Willson & Sons, Inc. v. Occupational Safety & Health*

---

[5] The National Association of Home Builders and the Associated General Contractors of America (together "NAHB") filed an amicus brief in support of NDC. Together with NDC, they have raised strong arguments that OSHA's multi-employer citation policy is invalid. But for the reasons stated in this section, § 660(a) prevents us from considering those arguments in this case.

NAHB has also asserted that NDC made reasonable efforts, as a controlling employer, to comply with OSHA's safety standards. But, as noted in the next section of this opinion, we conclude that the ALJ's findings concerning reasonable diligence are supported by substantial evidence on the record as a whole.

*Rev. Comm'n*, 134 F.3d 1235, 1241 (4th Cir. 1998) ("[Section] 660(a) clearly states that, '[n]o objection that has not been urged before the Commission shall be considered . . . , unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.' . . . Therefore, having found no extraordinary circumstances to excuse this omission, we hold that the fine cannot properly be considered here." (quoting § 660(a)).

## B. Reasonable Diligence

Assuming a controlling employer can be held liable for violating 29 C.F.R. § 1926.501(b)(13) under OSHA's multi-employer citation policy—an issue we cannot address in this case pursuant to § 660(a)—the parties agree that a controlling employer is "reasonably . . . expected to prevent or detect and abate the violations due to its supervisory authority and control over the worksite." *Centex-Rooney Constr. Co.*, 16 OSHC 2127, 1994 WL 682931, at *2 (No. 92-0851); *accord Suncor Energy (U.S.A.) Inc.*, 2019 OSHD 33705, 2019 WL 654129, at *4 (No. 13-0900) (same). In other words, the parties agree that, under the Commission's precedents, a controlling employer must exercise reasonable care to either prevent or detect and abate safety violations.

The ALJ found that NDC did not exercise reasonable care as a controlling employer. In this petition for review, NDC asserts that there is sufficient evidence of "NDC's efforts to prevent violations" and that its efforts "to abate violations committed by subtiers were 'sufficiently persistent,' realistic, practical and

reasonable." NDC further asserts that the ALJ did not consider "whether NDC took reasonable measures to obtain abatement."[6]

Our analysis of whether the ALJ erred in finding that NDC failed to exercise reasonable care proceeds in two steps. First, we consider whether NDC exercised reasonable care to prevent the safety violations. Second, we consider whether NDC exercised reasonable care to detect and abate the safety violations.[7]

Under § 660(a), our analysis is specific to whether the ALJ's factual findings, which were adopted by the Commission, "are supported by substantial evidence on the record as a whole." *J.A.M. Builders*, 233 F.3d at 1352 (applying this standard to an ALJ's decision, which became the Commission's final order after the Commission declined the petitioner's request to review); *see Fla. Lemark Corp. v. Sec'y, U.S. Dep't of Lab.*, 634 F. App'x 681, 685 n. 3 (11th Cir. 2015) ("Because the Commission declined review, the

---

[6] NDC also asserts that the ALJ erred by transforming the duty NDC owed— i.e., NDC was reasonably expected to prevent *or* detect and abate the violations—into a conjunctive obligation, such that NDC was required to prevent *and* detect and abate the violations. NDC further asserts that "[w]hen a controlling employer has knowledge of a subcontractor's safety violations," the analysis should focus only on whether the controlling employer took "reasonable measures to obtain abatement." Like NDC's argument with respect to the validity of OSHA's multi-employer citation policy, NDC failed to raise these specific issues in its petition for discretionary review. Therefore, we will not address these specific arguments on appeal. *See* § 660(a).

[7] Contrary to NDC's assertion, the ALJ did consider whether NDC abated the safety violations.

ALJ's order became the final order of the Commission. . . . Therefore, we review the ALJ's decision under the same standards as we would a decision issued by the Commission."). If so, we must affirm the conclusions reached by the ALJ. *See Fluor Daniel*, 295 F.3d at 1240–41.

### 1. *Whether NDC Exercised Reasonable Care to Prevent the Safety Violations*

The ALJ found that NDC did not exercise reasonable diligence in preventing safety hazards at the worksite. NDC asserts that the ALJ's findings are not supported by substantial evidence because NDC sought to prevent safety violations by monitoring the worksite and by immediately "call[ing] . . . any offending subcontractor whenever violations were discovered."

We find that the ALJ's findings are supported by "substantial evidence on the record considered as a whole." § 660(a). NDC's employees testified that they did not specifically monitor for compliance with safety standards when they walked around the worksite. Moreover, the record suggests that NDC observed fall-protection-related safety violations "a couple times a week," and the record is devoid of the measures NDC took to prevent those violations from occurring.

While NDC notified subcontractors of the safety violations NDC observed, that was not a measure to prevent—i.e., "[t]o anticipate or act in advance," *Prevent*, Oxford English Dictionary (3d ed. 2007)—a violation from occurring. The record also

suggests that NDC's employees discussed safety issues at meetings with NDC's subcontractors. But those discussions appear to have concerned safety issues that had already occurred or that were on-going, such as the lack of safety rails on balconies. The record does not suggest that NDC's employees discussed preventing future safety violations at its meetings with subcontractors.

Given the quantum of evidence, the ALJ reasonably concluded that NDC did not exercise reasonable diligence to prevent the safety violations before they occurred. *See Fluor Daniel*, 295 F.3d at 1241 (holding that the Commission's determination was supported by substantial evidence where the petitioner offered "no reason" for this Court to hold that the Commission erred and the testimony supported the Commission's findings).

## 2.  *Whether NDC Exercised Reasonable Care to Detect and Abate the Safety Violations*

The ALJ also found that NDC could have, but did not, detect the safety violations and that NDC "did not ensure that fall hazards were abated immediately or whether or not hazards were resolved at all." NDC, however, contends that it acted reasonably because NDC's employees walked around the worksite daily and notified its subcontractors of safety violations. NDC further contends that the subcontractors immediately abated those violations, including the violations the OSHA inspectors observed. But NDC's arguments fail for two reasons.

First, "[t]he substantial evidence standard limits the reviewing court from 'deciding the facts anew, making credibility determinations, or re-weighing the evidence.'" *Stone & Webster Constr., Inc. v. U.S. Dep't of Lab.*, 684 F.3d 1127, 1133 (11th Cir. 2012) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). And here, the ALJ found that NDC's assertion that the subcontractors abated all safety violations immediately, including the cited safety violations, was not credible.

The ALJ's determination was based on testimony from NDC's employees that, while the employees believed NDC's subcontractors abated the safety violations they observed, they did not confirm whether the subcontractors, in fact, abated the violations. Moreover, at trial, NDC did not present evidence to show that the safety violations were, in fact, abated, and the evidence that was presented showed that the types of fall protection safety violations OSHA observed occurred before, and persisted after, the OSHA inspections. In light of this testimony and evidence, we conclude that substantial evidence—i.e., "such relevant evidence as a reasonable person would accept as adequate," *J.A.M. Builders*, 233 F.3d at 1352 (quoting *Lewis*, 125 F.3d at 1440)—supports the ALJ's credibility determination, and we cannot make our own "credibility determinations, or re-weigh[] the evidence." *Stone & Webster Constr.*, 684 F.3d at 1133; *see Fla. Lemark Corp.*, 634 F. App'x at 686 ("Substantial evidence supports the ALJ's determination that a hazard existed at the worksite. . . . The ALJ reasonably relied on Ayub's testimony[, and] . . . "[i]n crediting Ayub's testimony, the ALJ also

reasonably relied on the lack of credible evidence contradicting it.").

Second, under Commission precedents NDC owed a duty to exercise reasonable care to detect and abate the violations under the circumstances. *See, e.g., Centex-Rooney Constr.*, 16 OSHC 2127, 1994 WL 682931, at *2; *Suncor Energy*, 2019 OSHD 33705, 2019 WL 654129, at *4. Under the circumstances of this case, the ALJ found that it was not reasonable for NDC to solely rely on notifying subcontractors of safety violations in order to abate the violations. And that finding is adequately supported by the record.

The record shows that NDC repeatedly notified its subcontractors in connection with the same fall protection violations and that these violations occurred before, and persisted after, the OSHA inspections. The record also demonstrates that the relevant safety violations were in plain sight and that NDC had the contractual authority to both compel its subcontractors to abate safety violations and to abate the violations itself.

Based on the record, NDC should have known that its subcontractors were not abating the safety violations and that NDC reasonably could have, but did not, take any other measures to abate them. *Cf. Cent. of Ga. R.R. Co. v. Occupational Safety & Health Rev. Comm'n*, 576 F.2d 620, 625 (5th Cir. 1978)[8] ("An

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

employer may carry out its statutory duties through its own private arrangements with third parties, but if it does so and if those duties are neglected, it is up to the employer to show why he cannot enforce the arrangements he has made. If he cannot make this showing, he must take the consequences. . . .").  Substantial evidence therefore supports the ALJ's conclusion because "the violative conditions were in plain view, they had existed for a significant period of time before the . . . inspection[s], and [NDC] could have ascertained their existence" and abated them "through the exercise of reasonable diligence." See Centex-Rooney, 16 OSHC 2127, 1994 WL 682931, at *2; cf. Edwin Taylor Corp. v. U.S. Dep't of Lab., 814 F. App'x 498, 502 (11th Cir. 2020) ("Given the quantum of evidence, the ALJ could reasonably conclude that [petitioner] willfully violated the fall protection regulations[, where] the ALJ relied on testimony from [petitioner's] employees showing that they knew of the fall protection regulations required for greater than six-foot fall risks yet disregarded that risk at its worksite.").  Because the ALJ's findings are supported by substantial evidence, "we are bound by the [ALJ's] determination[s]." See Fluor Daniel, 295 F.3d at 1240.

## V.    CONCLUSION

For the reasons stated, we deny NDC's petition for review and affirm the ALJ's decision.

**PETITION DENIED, AFFIRMED.**